2011 OK CIV APP 34

**Bill GROGAN, Plaintiff/Appellant,**

v.

**KOKH, LLC, a foreign limited liability company; Andrew Spino; Jaime Cerreta; Matt Austin; Jose Delossantos; Michael Ross Stewart and Todd Walker, Defendants/Appellees.**

**No. 107,642.**

Court of Civil Appeals of Oklahoma, Division No. 2.

Jan. 3, 2011.

Certiorari Denied Feb. 28, 2011.

Approved for Publication by Order of the Supreme Court March 16, 2011.

Steven L. Parker, Tom T. Pruitt, Tecumseh, Oklahoma, for Plaintiff/Appellant.

Jon Epstein, Robert D. Nelon, Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Oklahoma City, Oklahoma, for Defendants/Appellees.

JOHN F. FISCHER, Presiding Judge.

¶ 1 Plaintiff Bill Grogan appeals the order of the district court granting the motion for summary judgment filed by KOKH, LLC, a foreign limited liability company, Andrew Spino, Jaime Cerreta, and Matt Austin (KOKH defendants). Oral Argument was conducted in this case on March 5, 2010. The appeal has been assigned to the accelerated docket pursuant to Oklahoma Supreme Court Rule 1.36(b), 12 O.S. Supp.2008, ch. 15, app. 1, and the matter stands submitted without appellate briefing. We affirm in part, reverse in part and remand for further proceedings.

## BACKGROUND

¶ 2 Grogan is a teacher and former coach at Macomb High School. He alleges that he was defamed and that his privacy was invaded by a television broadcast aired by KOKH Channel 25. The broadcast concerned an incident after a basketball game in which some students became upset when a referee required the removal of a cow bell a student had been ringing. According to Grogan, a student asked him if the referee had the authority to exclude the cow bell. Grogan explained that, during the game, the referee was in charge of the gym and had complete authority to take whatever measures he considered necessary. Grogan explained it was like the authority the Deputy Sheriff standing next to them had to shoot somebody if it was necessary to stop a crime.

¶ 3 Subsequently, other students standing near Grogan reported to school officials that Grogan had threatened to shoot, or have shot, students who did not leave after the game. Some parents became upset and complained to school officials. After investigating the matter, school officials concluded that there had been a misunderstanding, and that Grogan had not intended to threaten anyone. Apparently unsatisfied, some parents contacted KOKH. A KOKH reporter investigated the incident, and a story was broadcast on February 29, 2008. After the broadcast, school officials revisited the matter and decided to reprimand Grogan for unprofessional conduct and to not renew his coaching contract.

¶ 4 Grogan sued KOKH, the three KOKH employees who participated in the broadcast, and three parents. After some initial discovery, the KOKH defendants filed a motion for summary judgment. The district court's order granting that motion is the subject of this appeal.[1]

## STANDARD OF REVIEW

¶ 5 Rule 13 of the Rules for District Courts of Oklahoma, 12 O.S. Supp.2008, ch. 2, app., governs the procedure for summary judgment in the district court. We review the district court's grant of summary judgment *de novo*. *Carmichael v. Beller*, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. On review, we examine the pleadings and evidentiary materials submitted by the parties to determine whether there exists a genuine issue of material fact. *Id*. This Court bears "an affirmative duty to test all evidentiary material tendered in summary process for its legal sufficiency to support the relief sought by the movant." *Copeland v. The Lodge Enters., Inc.*, 2000 OK 36, ¶ 8, 4 P.3d 695, 699.

¶ 6 When considering a motion for summary judgment, the evidence and the inferences to be drawn from the evidence must be viewed in the light most favorable to the party opposing the motion. *Hargrave v. Canadian Valley Elec. Co-op., Inc.*, 1990 OK 43, ¶ 14, 792 P.2d 50, 55. If the moving party "has not addressed all material facts, or if one or more such facts is not supported by" acceptable evidentiary material, summary judgment "is not proper." *Spirgis v. Circle K Stores, Inc.*, 1987 OK CIV APP 45, ¶ 10, 743 P.2d 682, 685 (approved for publication by the Oklahoma Supreme Court). We will reverse an order granting summary judgment where it appears from the record that material facts concerning issues raised are conflicting or, if the material facts are undisputed, that reasonable persons in the exercise of fair and impartial judgment might reach different conclusions from those facts. *Buck's Sporting Goods, Inc. of Tulsa v. First Nat'l Bank & Trust Co. of Tulsa*, 1994 OK 14, ¶ 11, 868 P.2d 693, 697–98. "Only if the

court should conclude that there is no material fact in dispute and the law favors the movant's claim or liability-defeating defense is the moving party entitled to summary judgment in its favor." *Copeland*, 2000 OK 36 at ¶ 8, 4 P.3d at 699. "Summary judgment is proper only when the pleadings, affidavits, depositions, admissions or other evidentiary materials" before the district court "establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Davis v. Leitner*, 1989 OK 146, ¶ 9, 782 P.2d 924, 926; *Northrip v. Montgomery Ward & Co.*, 1974 OK 142, ¶¶ 11–13, 529 P.2d 489, 494–95.

## ANALYSIS

¶ 7 The KOKH defendants' motion for summary judgment and Grogan's response have narrowed the issues in this appeal. Grogan complains about only two aspects of the broadcast: (1) at the beginning of the broadcast a KOKH employee stated "a teacher is accused of threatening to shoot students"; and (2) the broadcast then showed Grogan's picture while a reporter stated "on the heels of terrorist threats at local schools and a shooting at NIU, some parents in Macomb are fuming. They say a teacher threatened their children and he should be punished like anyone else." On the basis of these statements, Grogan asserts two theories of recovery. First, he contends that he never threatened to shoot students and was defamed when KOKH employees stated during the broadcast that he had done so. Second, he contends that his privacy was invaded when he was falsely portrayed as a terrorist during the broadcast.

### I. Defamation

¶ 8 A plaintiff seeking to recover for defamation must prove "a false or malicious unprivileged publication by writing, printing, picture, or effigy ... which exposes [the plaintiff] to public hatred, contempt, ridicule or obloquy, or which tends to deprive him of

---

1. Although Grogan's claims against the other three defendants remain pending, the district court directed that its order granting the KOKH

defendants' motion for summary judgment be filed as a final judgment pursuant to 12 O.S.2001 § 994(4).

public confidence, or to injure him in his occupation...." 12 O.S.2001 § 1441.[2] Because of the media context in which much of Grogan's claim is grounded, the summary judgment briefing in this case focused on the extent to which the KOKH broadcast was protected by constitutional principles.

■ ¶ 9 The First Amendment to the United States Constitution establishes a foundational principle of this democracy. "Congress shall make no law ... abridging the freedom of speech, or of the press."[3] Likewise, the Oklahoma Constitution provides vigilant protection for the right to speak. "Every person may freely speak, write, or publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press." Okla. Const. art. 2, § 22. But freedom to speak is not without limitation; responsibility for the abuse of the right to speak is preserved:

> Freedom of the press does not impart an absolute right to publish without responsibility whatever one may choose, or an unrestricted and unbridled license that affords immunity for every possible use of language. Recovery should be allowed for the abuse of such freedom. Libel is one such abuse. Invasion of privacy is another.

*McCormack v. Oklahoma Publ'g Co.*, 1980 OK 98, ¶ 17, 613 P.2d 737, 741.

■ ¶ 10 The parties seem to be in essential agreement as to the law applied by the district court. Grogan is a public figure. *See Johnston v. Corinthian Television Corp.*, 1978 OK 88, ¶ 5, 583 P.2d 1101, 1102–03. Consequently, the KOKH defendants are not liable for any false statement made during the broadcast unless Grogan can prove "actual malice" on the part of those defendants.

*See New York Times Co. v. Sullivan*, 376 U.S. at 279, 84 S.Ct. at 726.

> Before a public official ... may recover for defamation he must show: (1) The publication of a defamatory statement, (2) that was false, and (3) was made with 'actual malice,' that is with knowledge that it was false or was made with reckless disregard of whether or not it was false.... [I]n *St. Amant v. Thompson*, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968), the court amplified the definition of 'reckless disregard' to include a requirement that the statement was made, although the publisher 'entertained serious doubts' concerning its truthfulness.

*Hart v. Blalock*, 1997 OK 8, ¶ 9, 932 P.2d 1124, 1126 (citations omitted).

■ ¶ 11 The material facts regarding Grogan's defamation theory of recovery are not in dispute. KOKH reported that parents had accused Grogan of threatening to shoot students. That statement is true. In fact, part of the broadcast replayed interviews with parents in which they made that claim. Whether Grogan did or did not threaten to shoot students is immaterial. Parents accused him of doing so and KOKH reported that fact. A defendant in a libel action may, "[a]s a defense thereto ... prove that the matter charged as defamatory was true...." 12 O.S.2001 § 1444.1. "The general rule is that the 'truth of the communication is a complete defense to a civil action for libel.'" *Oklahoma Publ'g Co. v. Kendall*, 1923 OK 999, 96 Okla. 194, ¶ 35, 221 P. 762, 768 (quoting *Ecuyer v. N.Y. Life Ins. Co.*, 101 Wash. 247, 172 P. 359 (1918)). *See Martin v. Griffin Television, Inc.*, 1976 OK 13, ¶ 29, 549 P.2d 85, 93–94 (citing 12 O.S.1971 § 1444, now section 1444.1, as codifying "the affirmative defense of the truth" of the statement). Because the statement in the broadcast on

**2.** *Cf.* Restatement (Second) of Torts § 558 (1977):

> To create liability for defamation there must be:
> (a) a false and defamatory statement concerning another;
> (b) an unprivileged publication to a third party;
> (c) fault amounting at least to negligence on the part of the publisher; and

> (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

**3.** *See New York Times Co. v. Sullivan*, 376 U.S. 254, 275, 84 S.Ct. 710, 723, 11 L.Ed.2d 686 (1964) ("The right of free public discussion of the stewardship of public officials was thus, in Madison's view, a fundamental principle of the American form of government.").

which Grogan based his defamation theory of recovery was true, the district court correctly granted the KOKH defendants' motion for summary judgment as to Grogan's defamation theory of liability, and we need not address the constitutional issue.

## II. Invasion of Privacy

¶ 12 Grogan's invasion of privacy theory of recovery relies on the aspect of that tort which subjects one to liability for publicly placing another in a false light. With respect to the elements of this tort, Oklahoma has adopted the Restatement.

> We have previously considered the test by which recovery of this sort is to be measured, and have adopted the Restatement view-that the defendant must have knowledge of, or act in reckless disregard as to the falsity of the publicized matter [and] the false light in which another would be placed.
>
> . . . .
>
> We have adopted a standard of knowing or reckless conduct to afford recovery to those who suffer mental anguish by reason of a false light invasion of privacy. Consequently, we are committed to that standard, and will not now adopt a standard of recovery which imposes liability on one who accidentally or negligently injures the feelings of another.

*Colbert v. World Publ'g Co.*, 1987 OK 116, ¶¶ 15–16, 747 P.2d 286, 291–92.

¶ 13 The elements of the invasion of privacy tort are set forth in Restatement (Second) of Torts:

§ 652A. General Principle

(1) One who invades the right of privacy of another is subject to liability for the resulting harm to the interests of the other.

(2) The right of privacy is invaded by

. . . .

(d) publicity that unreasonably places the other in a false light before the public, as stated in § 652E.

§ 652E. Publicity Placing Person In False Light

One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if

(a) the false light in which the other was placed would be highly offensive to a reasonable person, and

(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

¶ 14 Grogan's invasion of privacy theory involves only a portion of the same broadcast on which his defamation theory is based. The broadcast began with the KOKH anchors introducing the story by reporting, (1) that parents claimed Grogan threatened to shoot students after the basketball game and the school was doing nothing about it, and (2) that the school claimed it was all a misunderstanding. The part of the broadcast on which Grogan relies for his false light tort followed this introduction and showed the KOKH reporter standing in front of the school gymnasium with Grogan's picture superimposed next to him, and under the graphic "Threat or Misunderstanding." The word "Threat" appears in bold, black letters; "Misunderstanding" appears underneath in white letters. The reporter states: "Well guys, on the heels of terrorist threats at local schools and a shooting at NIU, some parents in Macomb are fuming. They say a teacher threatened their children and he should be punished like anyone else." The story then proceeded to show interviews with two parents who reported that six students said Grogan threatened to shoot students, an attempt to interview Grogan who stated this was the result of an old grudge, and an interview with the school principal who stated he had concluded that whatever Grogan said was either misunderstood or misheard, and taken out of context. The broadcast also showed a copy of one student's incident report provided by a parent, and included commentary from the reporter relating the parents' desire to have Grogan suspended until a full investigation could be completed. Grogan argues that showing his picture while discussing "terrorist threats at local schools" and a recent shooting of students at Northern Illinois University unreasonably and

falsely portrayed him as a terrorist or involved in the shooting of students.[4]

### A. Questions of Law

■ ¶ 15 KOKH first argues that the reporter's lead-in statement cannot be reasonably interpreted as portraying Grogan as a terrorist or associated with terrorism. Whether the lead-in is capable of the meaning Grogan alleges is initially a question of law. Although this is a question of first impression in a false light invasion of privacy case, we reach this conclusion for two reasons. First, this is the approach required when the claim is based on the tort of outrage.

> It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where reasonable [persons] may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability.

Restatement (Second) of Torts § 46, cmt. h. In *Munley v. ISC Financial House, Inc.*, 1978 OK 123, ¶ 10, 584 P.2d 1336, 1338, the Oklahoma Supreme Court adopted comment h to Restatement § 46 for the tort of outrage. And, as the Supreme Court noted, "the right of action for false light invasion of privacy is a product of the same societal need as the tort of outrage...." *Colbert*, 1987 OK 116 at ¶ 16, 747 P.2d at 292. More importantly, this is the approach required for review of actual malice issues at the summary judgment stage in defamation cases, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255–56, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986), and is essentially equivalent to the post-trial review of the evidence constitutionally required in defamation cases

to determine whether actual malice has been proven as a matter of law. "The question whether the evidence in the record in a defamation case is sufficient to support a finding of actual malice is a question of law." *Harte–Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 685, 109 S.Ct. 2678, 2694, 105 L.Ed.2d 562 (1989). *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 17, 110 S.Ct. 2695, 2705, 111 L.Ed.2d 1 (1990). We find no less constitutional scrutiny required for false light invasion of privacy cases involving public figures.

■■ ¶ 16 As a matter of law, we conclude that the lead-in is capable of the meaning argued by Grogan. This story was about whether Grogan did or did not threaten to shoot students after the basketball game. It was not a story about terrorism, or any threats of terrorism at Macomb high school. And, the parents interviewed during the story did not claim that Grogan was a terrorist or that the school was doing nothing to protect their children from threats of terrorism. As characterized by KOKH in its Petition for Rehearing: "This lead-in is the only reference to terrorism or terrorists in the broadcast. On its face, the lead-in is contextual, referring to preceding events, not the event involving Grogan that was being reported." By injecting terrorism into this story, the broadcast relied on a "sound bite," that stated, "on the heels of terrorist threats," that was unrelated to the story and focused the attention of viewers on an incendiary and highly offensive subject. It is not unreasonable to conclude that the lead-in associated Grogan with that subject.[5] Although the parties are sharply divided as to whether this portion of the broadcast actually did portray Grogan as a terrorist, we cannot conclude as a matter of law that it did not. "Where either result finds reasonable support in the

---

**4.** For clarity, subsequent references to the portrayal of Grogan as a terrorist are intended to include both possibilities.

**5.** It is clear from the transcript of the hearing on the KOKH defendants' motion that the district court was troubled by this portion of the broadcast:

> [T]he lead-in to this story was meant for no other reason than to try to grab attention. And, frankly, it was inappropriate....
>
> ....
>
> This, in my opinion, was shoddy reporting. It was aimed at grabbing headlines. What it did, by grabbing the headlines, initially, the first impression, to Mr. Grogan, was incredibly unfortunate and unfair, in light of the balance of their story."

record it is for the jury, not for this Court, to determine whether there was knowing or reckless falsehood." *Time, Inc. v. Hill,* 385 U.S. 374, 394 n. 11, 87 S.Ct. 534, 545 n. 11, 17 L.Ed.2d 456 (1967).

### B. The Summary Judgment Record

■ ¶ 17 Having concluded that the broadcast could be interpreted as Grogan contends, we examine the record to determine whether Grogan has satisfied the elements of the tort, or has shown that facts material to those elements are in dispute. A false light plaintiff is required to prove three things: (1) that the plaintiff was portrayed in a false light, i.e., "the matter published concerning the plaintiff is not true," Rest. § 652E, cmt. a, (2) that the false portrayal would be highly offensive to a reasonable person such that the plaintiff would be "justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity," Rest. § 652E, cmt. c, and (3) that the publisher "had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." Rest. § 652E(b).

■■ ¶ 18 It is undisputed that Grogan is not a terrorist, and that portrayal of him as a terrorist would be highly offensive to a reasonable person. Therefore, to satisfy the first element of this tort, Grogan must show that the broadcast did portray him as a terrorist. Unlike the facts regarding Grogan's defamation theory, the material facts regarding this issue are controverted. KOKH relies on the deposition of its reporter, who testified that when he wrote the lead-in for the story he "in no way meant Mr. Grogan was a terrorist." Grogan produced the affidavits of three people who saw the broadcast and concluded that the KOKH broadcast implied that Grogan was a terrorist. Grogan also produced the affidavit of an administrator in another school district who refused to employ Grogan because he had been the subject of the "terrorist story." Finally, Grogan testified that some children in his school seemed apprehensive in his presence and asked if he was a terrorist. Whether or not this aspect of the broadcast portrayed Grogan as a terrorist, "reasonable

persons might reach different inferences or conclusions...." *Buck's Sporting Goods, Inc. of Tulsa v. First Nat'l Bank & Trust Co. of Tulsa,* 1994 OK 14, ¶ 11, 868 P.2d 693, 697–98.

> Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255, 106 S.Ct. at 2513 (applying the clear-and-convincing standard to review of summary judgment motions in defamation cases when the factual dispute concerns actual malice). Therefore, we find that viewed in the light most favorable to Grogan, the KOKH broadcast portrayed him as a terrorist; that portrayal was false and would be highly offensive to a reasonable person, or that facts material to those findings are in dispute. Consequently, for summary judgment purposes, Grogan has satisfied the first two elements of the false light invasion of privacy tort.

### C. Actual Malice

■ ¶ 19 The third element of the false light tort requires proof that KOKH knew or acted in reckless disregard as to the falsity of the publicized matter and the false light in which Grogan would be placed. Rest. § 652E(b). This requirement is virtually identical to the actual malice standard adopted in *New York Times Co. v. Sullivan,* 376 U.S. at 280, 84 S.Ct. at 726: "with knowledge that it was false or with reckless disregard of whether it was false or not." And, the *New York Times Co. v. Sullivan* actual malice standard is applicable to false light invasion of privacy cases. *Time, Inc. v. Hill,* 385 U.S. at 387–88, 87 S.Ct. at 542; *Cantrell v. Forest City Publ'g Co.,* 419 U.S. 245, 95 S.Ct. 465, 42 L.Ed.2d 419 (1974). Likewise, the Oklahoma Supreme Court has adopted the actual malice test for false light invasion of privacy claims. *Colbert,* 1987 OK 116 at ¶ 16, 747 P.2d at 292.

¶ 20 " '[A]ctual malice' is a term of art, created to provide a convenient shorthand expression for the standard of liability" established in *New York Times Co. v. Sullivan. Cantrell*, 419 U.S. at 251, 95 S.Ct. at 469–70. It requires proof of knowing or reckless disregard for the truth. *See id.* The known falsehood aspect is straightforward. The "reckless disregard of the truth, in the context of the standard of liability for invasion of privacy actions ... means subjective awareness of probable falsity, such that there must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." Russell G. Donaldson, *False Light Invasion of Privacy*, 57 A.L.R.4th 22, § 37[b] (citing *Hotchner v. Castillo–Puche*, 551 F.2d 910, 913 (2d Cir. 1977); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 335 n. 6, 94 S.Ct. 2997, 3004 n. 6, 41 L.Ed.2d 789 (1974) (citing *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968))). The actual malice element of the false light tort, therefore, contains two components stated in the alternative. Either the defendant knows the publication is false and would portray the plaintiff in a false light, or the defendant acts with reckless disregard as to whether the statement is false and would portray the plaintiff in a false light. As articulated in the Restatement, there are two issues with respect to the defendant's state of mind: the falsity of the publication and the false light in which the plaintiff would be portrayed.

### 1. The Knowledge Argument

¶ 21 KOKH focuses on the second aspect of the actual malice standard arguing that it did not know its broadcast would be interpreted as portraying Grogan in a false light. A similar issue is involved in a defamation claim with respect to whether the defendant knows not only that the publication is false but also that it will defame the plaintiff.

> One who publishes a false and defamatory communication concerning a public official or public figure in regard to his conduct, fitness or role in that capacity is subject to liability, if, but only if, he
> (a) knows that the statement is false and that it defames the other person, or
> (b) acts in reckless disregard of these matters.

Rest. § 580A. However, there is no definitive guidance on this issue.

> The Supreme Court cases to date have been confined to factual situations in which the communication in question gave warning of its defamatory character and the problem was whether it was true or false. The Court therefore has not specifically adverted to the standard of fault to be imposed regarding the defamatory character of the communication. There is reason to believe that the same standard of knowledge or reckless disregard will be imposed.

Rest. § 580A, cmt. d. We think it is clear that the actual malice standard determines the standard of fault. However, KOKH's argument misperceives the applicability of the second component of the actual malice test in this case. Again, analogizing to defamation law in the absence of direct authority:

> [I]f a statement is published regarding a public figure which is not defamatory on its face so that its defamatory character becomes apparent only to a person who has a knowledge of certain extrinsic facts, the defendant would be liable only if he knew of those extrinsic facts or published the statement in reckless disregard of their existence. (Cf. § 580B, Comments b and c). On the other hand, if the only question is whether the language is capable of bearing a particular meaning and whether that meaning is defamatory or not, that question is one of law that does not require the application of a standard of conduct. (See § 614).

Rest. § 580A, cmt. d. Therefore, assuming the publication is capable of the false portrayal the plaintiff alleges, proof of the defendant's knowledge or reckless disregard of the false light in which the plaintiff is portrayed is only required if the false portrayal is dependent on extrinsic facts that may or may not have been known to the defendant.[6] Not

---

**6.** The cases on which KOKH relies apply the standard of actual malice that we apply in this

only does KOKH not point to any extrinsic facts necessary to interpret the lead-in as portraying Grogan as a terrorist, this is not a case in which facts extrinsic to the broadcast are necessary to reach that interpretation. We have determined that as a matter of law the broadcast can reasonably be interpreted as Grogan contends. Further, the nature of this broadcast "gave warning" that the false portrayal argued by Grogan was a reasonable possibility. KOKH has articulated no reason why it should escape liability if it portrayed Grogan in a false and highly offensive light merely because it did not intend to do so. This does not collapse the two prongs of the actual malice test into one. Rather, having determined that the broadcast could be interpreted as Grogan contends and that the alleged portrayal would be false, it is the absence of the need to rely on extrinsic facts that renders unnecessary at the summary judgment stage an investigation into whether the KOKH reporter knew or recklessly dis-

case. The facts of these cases can be distinguished from the facts in the case before this Court. *Howard v. Antilla*, 294 F.3d 244 (1st Cir.2002), involved a story about whether a company executive's true identity was that of a convicted felon, based on rumors circulated by short sellers of the company's stock. The story contained facts suggesting that the executive was the same man who had been convicted of the felony, but also contained facts suggesting the contrary. The court, vacating a jury verdict against the reporter for the false light claim, found it to be "questionable, even doubtful, that the article is actually capable of bearing the harmful implication charged by [plaintiff]," and that the author of the article never took the "position of evaluating the truth or falsity of" the statements in the article. *Id.* at 252. The facts in *Antilla* resemble the facts on which Grogan based his defamation claim, the portion of the broadcast reporting parents' accusations that Grogan threatened to shoot students. They are different, however, than the facts on which Grogan bases his false light claim, that is, the portion of the broadcast involving the reporter's lead-in about terrorist threats given while superimposing Grogan's photo in the background. The *Antilla* court found that even if the article could be read as communicating the false implication, the plaintiff had failed to produce sufficient evidence to meet the actual malice standard. *Id.* at 256. *Russell v. Am. Broad. Cos., Inc.*, 1997 WL 598115 (N.D.Ill. 1997), not reported in F.Supp., involved a story about sales practices in the fish market. The court, granting summary judgment in favor of the defendant as to plaintiff's false light and defamation claims, found that "[a]lthough the implications to which plaintiff points could reasonably be derived from the program," the statements were the defendant's "own interpretation of plaintiff's words and actions," and therefore were "protected expression." *Id.* at *4. Additionally, plaintiff failed to show "a genuine issue of material fact regarding [defendant's] actual malice...." *Id.* at *8. In *Battaglieri v. Mackinac Center for Public Policy*, 261 Mich.App. 296, 680 N.W.2d 915, 921–22 (2004), the court reversed the trial court's denial of summary judgment in a false light claim based on statements in a research and advocacy group's publication in a fundraising letter made by the president of a teachers' union. The court found that plaintiff had come forward with no "circumstantial evidence" of actual malice and therefore could not "avoid summary disposition...." *Id.* at 922. Additionally, the court concluded that it was "highly unlikely that the recipients of the letter would" interpret it as casting plaintiff in the false light he alleges, and this "would require a strained reading of the document." *Id.* These facts are likewise distinguishable from the facts in this case because we have found that the interpretation Grogan alleges is reasonable and not dependent on a "strained reading." *See also Saenz v. Playboy Enters., Inc.*, 841 F.2d 1309, 1318 (7th Cir.1988) (affirming summary judgment in a suit by a public official who claimed an article implied that he was complicit in the torture of political dissidents, finding "a reasonable jury could not conclude that the defendants either intended or were reckless with regard to the potential falsity of defamatory inferences which might be drawn from the article," and noting that "rather than demonstrating that [defendants] intended to label him a torturer, the bulk of [plaintiff's] evidence merely indicates that the defendants could not reasonably have concluded that he was a torturer"); *Woods v. Evansville Press Co., Inc.*, 791 F.2d 480, 486–88 (7th Cir. 1986) (affirming summary judgment in a defamation by implication case, assuming the article could "reasonably be read to contain the defamatory implications that the plaintiff ascribes to it," but finding insufficient evidence in the record "to create a triable issue that the defendants acted with actual knowledge or with reckless disregard of the falsity of the column," but noting that "[t]he result in this case might be different if the column could reasonably have only the meaning the plaintiff ascribes to it"); *Dodds v. Am. Broad. Co., Inc.*, 145 F.3d 1053, 1064 (9th Cir.1998) (affirming summary judgment in a defamation by implication case, finding "no evidence" demonstrating that defendants acted with actual malice in conveying "the defamatory implication"). In *Dodds*, the defendants admitted the publication but argued that the plaintiff's interpretation of the publication was unreasonable. That issue has yet to be determined in this case. We have determined as a matter of law that this broadcast is capable of being interpreted as falsely portraying Grogan as a terrorist, and if so interpreted, the material facts are in dispute as to whether the defendants acted with actual malice.

regarded whether the broadcast would portray Grogan as a terrorist.[7]

## 2. The Intent Argument

¶ 22 KOKH next argues that the actual malice test, "has been uniformly interpreted to mean that for the publisher to be liable for false light invasion of privacy, he must have *intended* the implication or recklessly disregarded that the implication is made." (Pet. for Reh'g at 4, emphasis in original.) Because it is undisputed that the reporter did not intend to portray Grogan as a terrorist, KOKH contends that there is no evidence in the record to establish this element of the false light tort. This argument takes two forms. First, it is asserted that unless the reporter intends to portray Grogan as a terrorist, Grogan cannot be portrayed in that light. Second, even if he did not intend to do so, unless the reporter was "actually aware" a viewer would understand the broadcast to imply that Grogan was a terrorist KOKH cannot be liable. Neither argument is persuasive.

■ ¶ 23 As to the first, the only direct authority on this issue in false light cases is provided in the Restatement: the plaintiff must show that the "defendant knows that the plaintiff, as a reasonable [person], would be justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity." § 652E, cmt. c. As previously discussed, and assuming that the broadcast portrayed Grogan as a terrorist, that is not an issue based on the record in this case, nor is it the focus of KOKH's argument. Citing defamation-by-implication cases from the federal courts of appeal and *R. Sack on Defamation: Libel, Slander and Related Problems*, § 5.51, at 5–77 (4th ed. 2010), KOKH contends that a false portrayal "perceived in a statement but not intended by the speaker cannot be actionable in public official or public figure cases." We find that is not a correct statement of the applicable law.[8] When the claim is based on defamation, the "question to be determined is whether the communication is reasonably understood in a defamatory sense by the recipient." Rest. § 563, cmt. c. Consequently, the Restatement contemplates liability even if a "defamatory meaning is not intended, [as long as it is] a reasonable construction of the language." *Id.* Therefore, subject to the actual malice test in a public official or public figure case, a defendant may be liable for defamation even if the defamatory meaning was not intended but was "mistakenly but reasonably" understood by the recipient of the publication. Rest. § 563. We find no reason for adoption of a different rule for false light invasion of privacy claims and we are unwilling to adopt the rule argued by KOKH.[9]

7. This does not preclude KOKH from making this argument at trial even in the absence of extrinsic facts necessary to construe the broadcast as Grogan contends, or from arguing that if construed as Grogan contends the broadcast did not give warning of the false portrayal. In that circumstance, the defendants' state of mind with respect to the false portrayal Grogan asserts would be relevant and defamation-by-implication cases would be instructive. But we must resolve the issue at the summary judgment stage based on the evidence in the record to date.

8. The defamation-by-implication cases KOKH cites are factually distinguishable from this case. Here, at the summary judgment stage, viewing the facts as favorable to Grogan, we have a statement of fact that implies Grogan is a terrorist. "[T]he appropriate summary judgment question [is] whether the evidence in the record could support a reasonable jury finding either that the plaintiff has shown actual malice by clear and convincing evidence or that the plaintiff has not." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255–56, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The evidence in this summary judg-

ment record shows that if the broadcast portrayed Grogan as a terrorist, KOKH knew that portrayal was false. Consequently, Grogan has established a triable issue not only as to the meaning of the broadcast, but also as to the defendants' actual malice or lack thereof. In any appeal from a judgment in favor of Grogan, evidence produced at trial will again be reviewed to determine whether actual malice was established. *See Connaughton*, 491 U.S. 657, 685, 109 S.Ct. 2678, 2694. But at this stage, the evidence is sufficient to establish a triable issue as to actual malice.

9. It may be that if a publisher does not intend a false portrayal and knows such a portrayal would be not only false but highly offensive, the case will be resolved on whether the publisher had a high degree of awareness that the publication would convey the false portrayal. For the reasons discussed supra, disputed facts material to that issue preclude summary judgment in favor of KOKH.

¶ 24 The second form of KOKH's argument contends that the "recklessly disregarded" alternative of the actual malice standard can only be satisfied by showing that the reporter "was actually aware ... what the false implication was." (Pet. for Reh'g at 6.) Although this shifts the focus from the reporter to the viewer, we find this argument similar to KOKH's first argument that actual malice requires proof the reporter knew the portrayal was false. If the reporter knows viewers will interpret the broadcast as portraying Grogan as a terrorist, he must intend that result if he airs the broadcast. We conclude that the second alternative in the actual malice test serves a different purpose, and exists to impose liability on publishers who do not know a portrayal is false but proceed with publication in reckless disregard of, or entertaining "serious doubts as to the truth of [the] publication." *See St. Amant v. Thompson,* 390 U.S. at 731, 88 S.Ct. at 1325. It is not just "the knowingly false statement," but also "the false statement made with reckless disregard of the truth, [that does] not enjoy constitutional protection." *Garrison v. State of Louisiana,* 379 U.S. 64, 75, 85 S.Ct. 209, 216, 13 L.Ed.2d 125 (1964).

¶ 25 Further, KOKH's argument for a standard that would confine record review to "only what the evidence shows was in the mind of the reporter" and limit liability to only those cases in which the reporter "was actually aware" how the broadcast would be interpreted is too narrow. We have determined as a matter of law that the broadcast could be viewed as Grogan contends. The interpretation of viewers in this record supports Grogan's claim. KOKH may produce evidence from other viewers that will contradict that interpretation. Ultimately whether the broadcast did or did not portray Grogan as a terrorist is for the jury to determine. It is one thing to argue that KOKH is not liable because its broadcast did not portray Grogan as a terrorist. It is quite another to argue that KOKH is not liable because, although its broadcast did portray Grogan as a terrorist and the evidence in the record supports that finding, its reporter testified that false portrayal was not "in his mind" at the time of the broadcast. This is not, as KOKH argues,

finding liability because it should have foreseen that the broadcast would portray Grogan as a terrorist. "Although failure to investigate will not alone support a finding of actual malice, the purposeful avoidance of the truth is in a different category." *Connaughton,* 491 U.S. at 692, 109 S.Ct. at 2698 (citing *St. Amant,* 390 U.S. at 731, 88 S.Ct. at 1326). It is this category with which the jury will be concerned in the trial of this case.

¶ 26 Finally, in both respects, KOKH's intent argument would extend a privilege to the publisher's state of mind and place the outcome of the case exclusively in the hands of the defendant. The federal circuit court cases cited by KOKH in support of this proposition are not persuasive and they are not the only federal authority relevant to this issue. "Although actual malice is subjective, a 'court typically will infer actual malice from objective facts.'" *Celle v. Filipino Reporter Enters. Inc.,* 209 F.3d 163, 183 (2d Cir.2000) (citing *Bose Corp. v. Consumers Union of the United States, Inc.,* 692 F.2d 189, 196 (1st Cir.1982); *Dalbec v. Gentleman's Companion, Inc.,* 828 F.2d 921, 927 (2d Cir.1987) (" 'Malice may be proved inferentially because it is a matter of the defendant's subjective mental state, revolves around facts usually within the defendant's knowledge and control, and is rarely admitted.' ")). Additionally, "a publisher cannot feign ignorance or profess good faith when there are clear indications present which bring into question the truth or falsity of defamatory statements." *See Donaldson,* 57 A.L.R.4th 22, § 37[b] (citing *Fitzgerald v. Penthouse Int'l, Ltd.,* 691 F.2d 666, 670 (4th Cir.1982)). More importantly, KOKH's argument is contrary to Oklahoma law. The reporter's lack of intent or absence of recklessness may be relevant to determining whether the broadcast was published with actual malice. However, "evidence to impeach the publisher's good faith" is also relevant. *See Herbert v. Oklahoma Christian Coalition,* 1999 OK 90, ¶ 21, 992 P.2d 322, 329. Therefore, we find that KOKH's intent is not determinative in our review of the order granting summary judgment.

¶ 27 For summary judgment purposes, a reasonable inference to be drawn from the reporter's testimony is that the reporter did not intend to refer to Grogan as a terrorist because the reporter knew that Grogan was not a terrorist. Whether Grogan has shown actual malice need not "be resolved conclusively in [his] favor," but he must produce "sufficient evidence supporting the claimed factual dispute ... to require a jury or judge to resolve the parties' differing versions of the truth at trial." *See First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968). Grogan has done so. Therefore, if the broadcast portrayed Grogan as a terrorist, the reporter knew that was not true and that portrayal of Grogan as a terrorist would be highly offensive to a reasonable person. Grogan is entitled to these inferences. *See Hargrave*, 1990 OK 43 at ¶ 14, 792 P.2d at 55. This view of the evidence would satisfy the first two elements of the invasion of privacy tort and the first alternative of the actual malice test.[10]

### 3. The Context Argument

¶ 28 KOKH also argues that an isolated portion of the broadcast cannot be considered; the broadcast must be viewed in its entirety to determine whether Grogan was falsely portrayed as a terrorist. First, this is not a case in which we must determine the meaning of an ambiguous word or phrase within a particular sentence. The reference to "terrorism" and "threats" in the reporter's lead-in is clear and unmistakable. What is in dispute is whether those clear and unambiguous references portrayed Grogan as a terrorist. *Masson v. New Yorker Magazine, Inc.*, on which KOKH relies, notes that "[t]he common law of libel takes but one approach to the question of falsity," that "overlooks

minor inaccuracies and concentrates [on] substantial truth." 501 U.S. 496, 516, 111 S.Ct. 2419, 2432–33, 115 L.Ed.2d 447 (1991). *Masson* and the context-of-the-entire-broadcast cases are based on the fact that some inaccuracy is "inevitable in free debate" and the recognition that imposing strict liability for defamation on broadcasters would have an undesirable chilling effect on speech related to public figures. *See Gertz*, 418 U.S. at 340, 94 S.Ct. at 3007. KOKH does not argue that any implication Grogan was a terrorist resulted from "minor inaccuracies." And, KOKH concedes that: "A demonstrably true statement in a broadcast may not save a defendant from liability for a substantially false or offensive statement or implication clearly made in another part of the broadcast." (Pet. for Reh'g at 12.) Nonetheless, KOKH argues that if the reference to "terrorist threats" while Grogan's picture was displayed falsely portrayed him as a terrorist, the context of the broadcast dispelled that portrayal.

¶ 29 Grogan filed a motion to retain this appeal in the Supreme Court, questioning whether the "actual malice" standard applied to defamation claims is appropriate for invasion of privacy claims.[11] Although *Colbert*, 1987 OK 116 at ¶¶ 15–16, 747 P.2d at 291–92, holds that the *New York Times Co. v. Sullivan* actual malice standard is applicable to false light invasion of privacy claims, the extent to which the case law developed in conjunction with the *New York Times* standard is applicable to those claims has not been well developed. The false light invasion of privacy tort goes "beyond the narrow limits of libel and slander and may afford a needed remedy not covered by defamation." *McCormack*, 1980 OK 98 at ¶ 12, 613 P.2d at 741.[12] In this regard, the Court's observa-

---

**10.** Because we reach this conclusion, we do not decide whether there is a dispute of material fact as to the second, "reckless disregard" alternative in the actual malice standard. We address that issue only to the extent necessary to determine that KOKH is not entitled to summary judgment as a result of that defense because we have refused to apply the rule advocated by the defendants.

**11.** Because the Supreme Court's denial of Grogan's motion to retain was silent as to that rul-

ing's effect, *LCR, Inc. v. Linwood Props.*, 1996 OK 73, ¶¶ 4–7, 918 P.2d 1388, 1391–92, prohibits our revisitation of that decision and we do not do so. We discuss the arguments raised in conjunction with whether the Supreme Court should retain this case only to the extent that they relate to the substantive arguments urged by the parties as to the merits of this appeal.

**12.** *But cf. Jews For Jesus, Inc. v. Rapp*, 997 So.2d 1098 (Fla.2008), rejecting the false light invasion of privacy tort in Florida because the minor

tion in *Time, Inc. v. Hill,* 385 U.S. at 390–91, 87 S.Ct. at 543 is pertinent:

> We find applicable here the standard of knowing or reckless falsehood, not through blind application of *New York Times Co. v. Sullivan,* relating solely to libel actions by public officials, but only upon consideration of the factors which arise in the particular context of the application of the New York statute in cases involving private individuals. This is neither a libel action by a private individual nor a statutory action by a public official. Therefore, although the First Amendment principles pronounced in New York Times guide our conclusion, we reach that conclusion only by applying these principles in this discrete context.

¶ 30 First, the "actual malice" test established by *New York Times Co. v. Sullivan* addresses policy concerns essential to the operation of the government. The First Amendment "was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *Roth v. United States,* 354 U.S. 476, 484, 77 S.Ct. 1304, 1308, 1 L.Ed.2d 1498 (1957).[13] The false light invasion of privacy tort protects the "interest of the individual." Restatement (Second) of Torts § 652E, cmt. b. And, "the interest to be vindicated is the injury to the person's own feelings." *Colbert,* 1987 OK 116 at ¶ 7, 747 P.2d at 289.

¶ 31 Second, defamation and invasion of privacy are distinct torts with separate origins. "[T]he right of action for false light invasion of privacy is a product of the same societal need as the tort of outrage or intentional infliction of emotional distress." *Id.* at ¶ 16, 747 P.2d at 292. "[T]he tort action for defamation has existed to redress injury to the plaintiff's reputation by a statement that is defamatory and false." *Masson v. New Yorker Magazine, Inc.,* 501 U.S. at 516, 111

S.Ct. at 2432 (citing *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 11, 110 S.Ct. 2695, 2702, 111 L.Ed.2d 1 (1990)). And, despite the protection of speech afforded by the First Amendment, the United States Supreme Court has recognized that "the compensation of individuals for the harm inflicted on them by defamatory falsehood" is a "legitimate state interest underlying the law of libel." *Gertz,* 418 U.S. at 341, 94 S.Ct. at 3008. Not only are the origins of these torts different, but also common law restrictions on libel suits are more severe than the restrictions applicable to false light privacy suits. *Colbert,* 1987 OK 116 at ¶ 14, 747 P.2d at 291.

¶ 32 These separate origins result in three basic differences between the two torts: (1) a false light claim is not limited to matters actually defamatory, either on their face or in context, but may be brought for any false portrayal that is highly offensive to a reasonable person; (2) although any publication gives rise to a defamation action, the false light claim requires publication to a substantial portion of the general public; (3) the essence of a defamation action is injury to reputation, but a false light plaintiff may recover for subjective suffering, embarrassment, and outrage in the absence of damage to reputation. 62A Am.Jur.2d *Privacy* § 128 (2005).[14]

¶ 33 Despite these differences, as the Oklahoma Supreme Court made clear in *Colbert,* the standard applicable to false light claims "is the equivalent of the *Hill* teaching that actual malice must be proven with convincing clarity by showing that the defendant had a high degree of awareness of probable falsity or in fact entertained serious doubts as to the truth of the publication." *Colbert,* 1987 OK 116 at ¶ 15, 747 P.2d at 291. Therefore, a plaintiff cannot avoid the general protection of speech afforded by the United

differences between the interests protected by false light and defamation actions did not outweigh the interest in protecting freedom of speech.

**13.** *Cf. Gaylord Entm't Co. v. Thompson,* 1998 OK 30, ¶ 13 n. 23, 958 P.2d 128, 138 n. 23 ("The Oklahoma Constitution's protection of free speech is far more broadly worded than the First

Amendment's restriction on governmental interference with speech.").

**14.** *Cf. 3 Smolla & Nimmer on Freedom of Speech* § 24:3 ("As a practical matter, 'false light' only 'kicks in' to add unique and additional tort coverage in the relatively rare case in which the false statement offends the victim but does not damage reputation.").

States and Oklahoma Constitutions by filing a false light claim.[15] We agree with this Court's statement in *Jordan v. World Publ'g Co.*, that one cannot circumvent the First Amendment by the label with which the suit is described. 1994 OK CIV APP 30, ¶¶ 13–14, 872 P.2d 946, 948.

¶ 34 Nonetheless, there are exceptions to the protection of speech established by the First Amendment. Vulgar, offensive and shocking language is "not entitled to constitutional protection under all circumstances," *FCC v. Pacifica Found.*, 438 U.S. 726, 747, 98 S.Ct. 3026, 3039, 57 L.Ed.2d 1073 (1978), and "fighting words" that inflict injury or incite an immediate breach of peace are punishable. *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942). "[N]ot all speech is of equal First Amendment importance." *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 758, 105 S.Ct. 2939, 2945, 86 L.Ed.2d 593 (1985). The "constitutional guarantees [of free speech] can tolerate sanctions against calculated falsehood without significant impairment of their essential function." *Time, Inc. v. Hill*, 385 U.S. at 389, 87 S.Ct. at 543.

¶ 35 Further, there are obvious areas in which rote application of the post *New York Times, Inc. v. Sullivan* cases in the false light invasion of privacy context is not appropriate. For example, cases discussing what is defamatory may not be helpful in determining what is "highly offensive to a reasonable person." "It is not ... necessary to the action for invasion of privacy that the plaintiff be defamed." Rest. § 652E, cmt. b.

If "blind application" of the *New York Times* standard is not warranted, the issue raised by KOKH is the extent to which the context-of-the-broadcast cases are applicable in the false light invasion of privacy context. Viewed in the light most favorable to Grogan, as we are required to do on summary judgment, we have a false and offensive implication in the reporter's lead-in to the story that is followed by demonstrably true but unrelated statements. As the Restatement notes with respect to defamation claims:

> [T]he text of a newspaper article is ordinarily not the context of the headline, although it may explain or qualify a defamatory imputation conveyed when the headline alone is read. This is true because the public frequently reads only the headlines of a newspaper or reads the article itself so hastily or imperfectly as not to realize its full significance.

Rest. § 563, cmt. d. That observation is equally applicable to broadcast stories. Therefore, we do not find that as a matter of law, unrelated but true statements in the rest of the broadcast provide a sufficient context to exonerate KOKH from liability for falsely portraying Grogan as a terrorist in the lead-in, if the jury finds that it did so.[16]

¶ 36 The actual malice standard is a "daunting one." *Howard v. Antilla*, 294 F.3d 244, 252 (1st Cir.2002). And, it must be proven with "convincing clarity." *Colbert*, 1987 OK 116 at ¶ 15, 747 P.2d at 291. Accord *Gertz*, 418 U.S. at 342, 94 S.Ct. at 3008. Nonetheless, were we to adopt the rule requested by KOKH, a mere footnote stating the false implication was not intended would

---

**15.** We do not hold that the actual malice standard is applicable to every tort that might be joined with a defamation claim. *Cf. Zacchini v. Scripps–Howard Broad. Co.*, 433 U.S. 562, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977) (holding that the "actual malice" standard does not apply to the invasion of privacy tort based on appropriation of another's name or likeness described in Restatement § 652A(2)(b)). Likewise, there is no obviously apparent "free speech" reason why a public figure must prove actual malice in support of a theory of recovery arising independent of the content of the broadcast, but related to a defamation claim, as, for example, an allegation that a reporter trespassed while obtaining information for the defamatory broadcast. Trespass requires proof of the physical invasion of the property of

another without permission. *Frank v. Mayberry*, 1999 OK 63, 985 P.2d 773. Our holding is limited to the false light invasion of privacy tort.

**16.** KOKH cites *Rinsley v. Brandt*, 700 F.2d 1304 (10th Cir.1983), for the proposition that in an invasion of privacy case, courts should not consider words in isolation but in the context of the entire publication. Nonetheless, "this proscription against reading statements in isolation does not forbid the court from examining the particular statements identified as objectionable for their truth or falsity...." *Id.* at 1310. We have previously determined that in the context of this broadcast, the lead-in could reasonably be interpreted as falsely portraying Grogan as a terrorist.

exonerate the most outrageous invasion of privacy without furthering the freedom of speech protected by the First Amendment.[17] "False statements of fact are particularly valueless; they interfere with the truth-seeking function of the marketplace of ideas, and they cause damage to an individual's reputation [or privacy] that cannot easily be repaired by counterspeech, however persuasive or effective." *Hustler Magazine v. Falwell,* 485 U.S. 46, 52, 108 S.Ct. 876, 880, 99 L.Ed.2d 41 (1988). "[C]alculated falsehood should enjoy no immunity." *Time, Inc. v. Hill,* 385 U.S. at 390, 87 S.Ct. at 543. Even true statements may be presented in a manner that unreasonably portrays another in a false and highly objectionable light. "When this is the case and the matter attributed to the plaintiff is not defamatory [the false light invasion of privacy tort] affords a different remedy, not available in an action for defamation." Restatement (Second) of Torts § 652E, cmt. b. "Although [with respect to false light invasion of privacy claims the] actual truth of statements is not necessarily an issue, a false impression relayed to the public, is." *McCormack,* 1980 OK 98 at ¶ 13, 613 P.2d at 741.

¶ 37 Where, as a matter of law, a portion of the broadcast could be reasonably interpreted as conveying the false meaning asserted by the plaintiff, we find unpersuasive the argument for application of the context-of-the-entire-broadcast cases to bar a false light invasion of privacy claim. Because *Time, Inc.* and *Colbert* require proof of actual malice in false light invasion of privacy cases, the freedom to speak ensured by the First Amendment is protected even though the publisher can point to other parts of the

broadcast that are true. It is for the jury to determine whether the broadcast falsely portrayed the plaintiff, and, if so, from all the evidence presented whether the broadcaster acted with actual malice.

### 4. The Privilege Claim

 ¶ 38 Finally, KOKH argues that even if its broadcast did portray Grogan as a terrorist, it is not liable because the broadcast was privileged. In support of this argument, KOKH cites *Crittendon v. Combined Commc'ns Corp.,* 1985 OK 111, ¶¶ 15–17, 714 P.2d 1026, 1029–30. *Crittendon* applied the substantial accuracy test of the Restatement (Second) of Torts § 611, cmt. f, regarding defamation claims, to determine whether a news report was a "fair and true report" of a judicial proceeding, and therefore privileged from an action for libel pursuant to 12 O.S. 2001 § 1443.1.[18] *Crittendon* is not helpful because KOKH does not point to any "judicial proceeding or any other proceeding authorized by law," that portrayed Grogan as a terrorist and about which its broadcast fairly reported. And, to the extent KOKH's broadcast commented on the Macomb School administrative proceedings dealing with this matter, there is no evidentiary material in this record showing that terrorism was discussed in any of those proceedings.

 ¶ 39 Similar to this argument, KOKH argues that its broadcast was protected by the common law fair comment privilege.

The common law fair comment privilege extends to fair expressions on matters of public interest. It differs from both:

> Third. By a fair and true report of any legislative or judicial or other proceeding authorized by law, or anything said in the course thereof, and any and all expressions of opinion in regard thereto, and criticisms thereon, and any and all criticisms upon the official acts of any and all public officers, except where the matter stated of and concerning the official act done, or of the officer, falsely imputes crime to the officer so criticized.
> B. No publication which under this section would be privileged shall be punishable as libel.

17. Cf. *Milkovich v. Lorain Journal Co.,* quoting Judge Friendly with approval: "[It] would be destructive of the law of libel if a writer could escape liability for accusations of [defamatory conduct] simply by using, explicitly or implicitly, the words 'I think.'" 497 U.S. at 19, 110 S.Ct. at 2706.

18. A. A privileged publication or communication is one made:
> First. In any legislative or judicial proceeding or any other proceeding authorized by law;
> Second. In the proper discharge of an official duty;

1) the common law fair report privilege—which affords a qualified or conditional privilege to the media when they republish defamatory material in an account of a public or official proceeding, *i.e.*, judicial proceedings, legislative sessions, judicial hearings, or official news conferences; and 2) its statutory counterpart, 12 O.S.2001 § 1443.1—which embodies a similar statutory privilege as a complete defense to libel. Although all three concepts overlap, the scope of the common law fair comment privilege, encompassing expressions of opinion on all matters of public opinion, is broader than either the common law fair report doctrine or the terms of the statute—both of which have their roots in political speech concepts and encompass public interest reports of official actions or proceedings.

*Magnusson v. New York Times Co. d/b/a KFOR*, 2004 OK 53, ¶ 10, 98 P.3d 1070, 1075 (holding that the common law fair comment privilege was a defense available to suits for defamation, invasion of privacy and intentional infliction of emotional distress). The fair comment defense protects statements that (1) involve matters of public concern, (2) are based on true or privileged facts, (3) represent the opinion of the speaker, and (4) are not made for the sole purpose of causing harm. *Id.* at ¶ 11, 98 P.3d at 1075. Clearly, that part of the KOKH broadcast containing interviews with parents who stated that Grogan threatened to shoot children is protected by this privilege. But Grogan's invasion of privacy theory of recovery is not based on that part of the broadcast. Grogan complains about the part of the broadcast in which he alleges KOKH's reporter implied that Grogan was a terrorist. We find that the common law fair comment privilege does not protect this part of the broadcast for two reasons. First, the reporter speaking about terrorism did not hold the opinion that Grogan was a terrorist. Second, even if he did,

that belief would not constitute an "opinion" for purposes of the fair comment privilege because whether Grogan is, or is not, a terrorist can be established by the relevant facts. A statement about an individual that can be proven true or false is not an opinion. *Magnusson*, 2004 OK 53 at ¶ 13, 98 P.3d at 1076. Further, if "the facts upon which [the speaker] bases his opinion ... are either incorrect or incomplete, or if [the] assessment of them is erroneous, the statement may still imply a false assertion of fact," and "couching such statements in terms of opinion does not dispel these implications[.]" *Milkovich v. Lorain Journal Co.*, 497 U.S. at 18–19, 110 S.Ct. at 2706. KOKH has failed to establish the existence of any privilege that would entitle it to summary judgment on Grogan's false light invasion of privacy claim.

## CONCLUSION

¶ 40 The KOKH broadcast that is the subject of this appeal contained two statements that form the bases for Grogan's claims. First, KOKH reported that parents accused Grogan of threatening to shoot students. Because that statement of accusation is true, the district court correctly granted the KOKH defendants' motion for summary judgment as to Grogan's defamation theory of recovery. With respect to Grogan's false light invasion of privacy theory of recovery, the material facts remain in dispute. The summary adjudication in that respect is reversed, and the case is remanded for further proceedings consistent with this Opinion.[19]

¶ 41 **AFFIRMED IN PART, REVERSED IN PART AND REMANDED FOR FURTHER PROCEEDINGS.**

WISEMAN, C.J., and BARNES, J., concur.

---

**19.** In its Petition for Rehearing, KOKH asserts that even if its broadcast portrayed Grogan as a terrorist, there is no evidentiary material showing that defendants Spino and Cerreta participated in that portrayal, and that therefore, their motion should be granted. That is not the standard for summary judgment. Here, there is an absence of evidence to show that Spino and Cerreta did not know of, approve, or lacked any

editorial control over the reporter's portion of the broadcast. If the moving party "has not addressed all material facts, or if one or more such facts is not supported by" acceptable evidentiary material, summary judgment "is not proper." *Spirgis v. Circle K Stores, Inc.*, 1987 OK CIV APP 45, ¶ 10, 743 P.2d 682, 685 (approved for publication by the Oklahoma Supreme Court).