Robert D. McCULLOUGH, II,
D.O., Respondent,

v.

CITIES SERVICE COMPANY,
Petitioner.

No. 60152.

Supreme Court of Oklahoma.

Jan. 31, 1984.

As Corrected Mar. 20, 1984.

Gable & Gotwals by Charles C. Baker
and John Henry Rule, Tulsa, for petitioner.

Pray, Walker, Jackman, Williamson &
Marlar, by Floyd L. Walker and Laura E.
Frossard, Tulsa, and James W. Smith,
Enid, for respondent.

LAVENDER, Justice:

Petition for Certiorari to review a certified interlocutory order of the District Court of Tulsa County overruling Petitioner, Defendant below, Cities Service Company's demurrer to the petition of Respondent, Robert D. McCullough, II, Plaintiff below, said review being sought pursuant to 12 O.S.1981 § 952(b)(3), and Rules 1.50 through 1.56 of the Rules of Appellate Procedure in Civil Cases. We determine that the Order affects a substantial part of the merits of the controversy and that an immediate appeal from the Order may materially advance the ultimate termination of the litigation, as certified by the trial court, and grant Certiorari.[1]

■ For the purpose of testing the sufficiency of a petition to withstand a demurrer, a demurrer admits the truth of all facts well pleaded together with all inferences which may be legally drawn therefrom. On appeal from an order sustaining a demurrer, the petition must be liberally construed and all of its allegations of fact must be taken as true, together with all reasonable inferences therefrom.[2]

The Order of Certification in part states:

"In his Petition, the plaintiff alleges in pertinent part that he was libeled by a publication of the defendant; that the action is brought as a class action, pursuant to 12 Okla.Stat., §§ 13–18, and that the proposed class consists of some 19,-686 Doctors of Osteopathy (D.O.'s) located throughout the United States; and that plaintiff's libel claim is typical of the claims of the other members of the proposed class. The allegedly defamatory language from the publication is set forth below:

"In general, a well person should make contact with a family doctor, one who can advise and treat the common illnesses. He should be an M.D. (Medical Doctor), not a D.O. (Doctor of Oste-

opathy) or a chiropractor. This statement is made so that you will choose the best available when there is a choice.

"M.D. doctors have a medical education and post-graduate training superior to that of D.O.'s. Chiropractors have no standard medical training at all; their theory of what causes disease is based on assumptions that are not scentifically [sic] proven. A D.O.'s training is similar to that of an M.D.'s, but in most of their schools and hospitals the standard of training is still below that of the M.D. institutions."

The Petition contains no allegations that the publication refers with any particularity to the Plaintiff. Any opprobrium attributable to the publication, therefore, is directed to Doctors of Osteopathy generally, and plaintiff's right of recovery depends upon plaintiff's individual right to bring the action as a member of the categorical group.

Actions for libel are statutorily defined in Oklahoma. Title 12 O.S.1981 § 1441 provides, in pertinent part: "Libel is a false or malicious unprivileged publication by writing, ... which ... tends ... to injure (any person) in his occupation, ...." There being no allegations of inducement or averment, colloquium or innuendo, we are here concerned only with whether the petition states a cause of action for libel per se.[3]

In *Kee v. Armstrong, Byrd & Co.,*[4] we said (Syllabus 3, by the Court):

"In order that words shall be libelous per se as disparaging a person in his trade or business, they must have been spoken of plaintiff in relation thereto, and be of such a character as would prejudice him by impeaching either his skill or knowledge, or attacking his conduct in such business."

---

1. *Community National Bank of Warr Acres v. Beasler,* Okl., 520 P.2d 813 (1974).

2. *Keel v. Titan Const. Corp.,* Okl., 639 P.2d 1228 (1982).

3. *Miskovsky v. Tulsa Tribune Company,* Okl., 678 P.2d 242 (1983).

4. 75 Okl. 84, 182 P. 494 (1919).

Here the publication does not disparage the Plaintiff's standing within his profession or business. It is the Plaintiff's profession or business itself which is assailed. In other words, Plaintiff's standing or reputation as a D.O. is not impugned by the publication, nor is a group of D.O.'s of which sub-group the plaintiff is a member impugned. Instead, it is the prerequisite medical and post-graduate training of D.O.'s as compared with that of M.D.'s which is said to make M.D.'s the "best available when there is a choice." We therefore conclude that the publication does not "tend" to injure plaintiff "in his occupation" within the meaning of § 1441.

Petitioner avers that the publication contains only opinions, and that opinions cannot form a basis of a libel action, being protected under the First Amendment to the United States Constitution and Art. 2, Sec. 22 of the Oklahoma Constitution as an exercise of the right of freedom of speech, citing *Miskovsky v. Oklahoma Publishing Co.*[5]

While we agree that expressions of opinion are thus constitutionally protected, the publication before us does not give underlying facts on the basis of which an opinion is expressed. Rather, it is in the form of a factual imperative which is either based upon no facts or which implies undisclosed factual basis for the categorical statements. Thus, it falls within the rubric summarized in Restatement, Torts (2nd Ed.) § 566, Illustrations, (4), p. 175:

"If the defendant expresses a derogatory opinion without disclosing the facts on which it is based, he is subject to liability if the comment creates the reasonable inference that the opinion is justified by the existence of unexpressed defamatory facts."

Not being an expression of opinion, but rather the assertion of a categorical fact, the publication is removed from the constitutionally protective mantle of the First Amendment and Art. 2, Sec. 22 of the Oklahoma Constitution.

Finally, plaintiff alleges that the trial court misconstrued our holding in *Fawcett Publications, Inc. v. Morris*,[6] or, in the alternative, that *Fawcett* should be overruled as a minority view, in the trial court's determination that the Plaintiff's petition states a cause of action for group libel maintainable by the plaintiff individually.

We are not here concerned with whether the cause should be certified as a class action, the cause not having advanced to the point of addressing a class action issue, but only with whether the plaintiff has stated a cause of action for group libel.

In *Fawcett*, the plaintiff brought a libel action in his own name and on his own personal behalf against defendant publishing company which published an article stating that the entire 1956 University of Oklahoma football team ingested amphetamines illegally during football games. There were sixty or seventy members of the 1956 team and the libelous publication made no personal reference to any particular member of the team. Thus, as in the case before us, the action was one for group libel where the opprobrium attributable to the plaintiff was confined to plaintiff's membership in the group. In *Fawcett*, the group consisted of sixty to seventy members; in the case before us, the group consists of 19,686 members.

In *Fawcett* we said (pp. 51, 52):

"While there is substantial precedent from other jurisdictions to the effect that a member of a 'larger group' may not recover in an individual action for a libelous publication unless he is referred to personally, we have found no substantial reason why *size* alone should be conclusive. We are not inclined to follow such a rule where, as here, the complaining member of the group is as well known and identified in connection with the

---

5. Okl., 654 P.2d 587 (1982), cert. denied, —— U.S. ——, 103 S.Ct. 235, 74 L.Ed.2d 186 (1982). See also *Miskovsky v. Tulsa Tribune Company, supra.*

6. Okl., 377 P.2d 42 (1962), cert. denied, 376 U.S. 513, 84 S.Ct. 964, 11 L.Ed.2d 968 (1964).

group as was the plaintiff in this case. In 34 Columbia Law Review 1322, supra, in considering group libel, it said, with good reason:

'* * * the primary consideration would properly seem to be whether the plaintiff was in fact defamed, although not specifically designated. Considerations adduced in support of the absolute denial of recovery are inconclusive, as against the desirability of providing a remedy for actual injury.

\* \* \* \* \* \*

'A more realistic approach would recognize that even a general derogatory reference to a group does affect the reputation of every member, and would adopt as its test the intensity of the suspicion cast upon the plaintiff.' "

■ A careful review of the reported cases before and after *Fawcett* has furnished no enlightenment which impels us to retreat from the two principles therein enunciated with reference to group libel actions wherein the opprobrium of the publication attributable to the individual plaintiff arises solely by reason of his membership in the group: (1) Size of the group alone is not conclusive although the size of the group is to be considered, and (2) the *intensity of suspicion cast upon the plaintiff* is the true test in determining a plaintiff's right to maintain a personal action for group libel.

The so-called "majority rule" is tersely summarized in Restatement, Torts, 2nd § 564A in the following language:

"Defamation of a Group or Class

"One who publishes defamatory matter concerning a group or class of persons is subject to liability to an individual member of it, but only if,

"(a) the group or class is so small that the matter can reasonably be understood to refer to the member, or

"(b) the circumstances of publication reasonably give rise to the conclusion

that there is a particular reference to the member." [7]

The failure in every reported case which has come to our attention to announce the precise numerical dividing line between groups which are "too large" and groups which are "small" enough to permit a plaintiff to recover, demonstrates the weakness of slavish reliance upon the general rule which relies upon numbers alone. Indeed, the Restatement, Torts 2nd Ed. § 564A (p. 168) states:

"It is not possible to set definite limits as to the size of the group or class, but the cases in which recovery has been allowed usually involved numbers of 25 or fewer."

Yet no reported case has undertaken to announce that 26 is "too large" to permit an individual plaintiff to recover, and in *Fawcett* the number was sixty to seventy, a group determined not to be "too large" to permit recovery.

In the case of *Brady v. Ottaway Newspapers, Inc.,*[8] the New York Supreme Court, Appellate Division, critically analyzed our holding in *Fawcett,* rejected the "majority rule" as solely determinative, adopted and applied the "intensity of suspicion" test and concluded that under the facts then before the Court, a cause of action by one of a group of at least 53 was legally maintainable.

From the teaching of *Brady,* we glean the following principles to which we subscribe:

1. The "of and concerning" element in defamation actions requires that the allegedly defamatory comment refer to the plaintiff.

2. Generally, an impersonal reproach of an indeterminate class is not actionable. The underlying premise of this principle is that the larger the collectivity named in the libel, the less likely it is that a reader would understand it to refer to a particular individual. The rule was designed to encourage frank discussions of matters of

---

7. 70 A.L.R.2d 1382; 50 AmJur2d Libel and Slander § 312.

8. 84 A.D.2d 226, 445 N.Y.S.2d 786 (1981).

public concern under the First Amendment guarantees. Thus the incidental and occasional injury to the individual resulting from the defamation of large groups is balanced against the public's right to know.

3. In contrast to the treatment of an individual in a large group which has been defamed, an individual belonging to a small group may maintain an action for individual injury resulting from a defamatory comment about the group, by showing that he is a member of the group. Because the group is small and includes few individuals, reference to the individual plaintiff reasonably follows from the statement and the question of reference is left for the jury.

4. Size alone is too narrow a focus to determine the issue of individual application in group defamation.

5. The intensity of suspicion test recognizes that even a general derogatory reference to a group may affect the reputation of every member. In order to determine personal application it requires that a factual inquiry be made to determine the degree that the group accusation focuses on each individual member of the group. The numerical size of the group is a consideration, but is not the only factor to be considered. One element to be considered is the prominence of the group and the prominence of the individual within the group.

In applying the above principles to the case before us, we hold that plaintiff's action is not maintainable.

The publication constitutes an impersonal reproach of an indeterminate class. There are some 19,686 D.O.'s in the United States. Since it is conceded no particular or personal reference is made to the plaintiff, there can be no intensity of suspicion cast upon the plaintiff. Whatever aspersions are cast by the publication fall upon the profession of osteopathy, and not upon a small or identifiable group within the class of osteopaths.

The Order of the trial court overruling Defendant's demurrer to plaintiff's petition is reversed.

BARNES, C.J., SIMMS, V.C.J., and HODGES, HARGRAVE, OPALA and WILSON, JJ., concur.