KRIMBILL v. TALARICO



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:KRIMBILL v. TALARICO

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 KRIMBILL v. TALARICO
2018 OK CIV APP 37
417 P.3d 1240
Case Number: 114777
Decided: 10/27/2017
Mandate Issued: 05/09/2018
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2018 OK CIV APP 37, 417 P.3d 1240

 

H. MICHAEL KRIMBILL, Plaintiff/Appellee,
v.
LOUIS C. TALARICO, III, an individual; and LCT CAPITAL LLC, a Delaware Limited Liability Company, Defendants/Appellants.

APPEAL FROM THE DISTRICT COURT OF
TULSA COUNTY, OKLAHOMA

HONORABLE LINDA G. MORRISSEY, TRIAL JUDGE

AFFIRMED

John J. Carwile, Clayton J. Chamberlain, MCDONALD, MCCANN, METCALF & CARWILE, L.L.P., Tulsa, Oklahoma, for Plaintiff/Appellee

Joel L. Wohlgemuth, Ryan A. Ray, NORMAN WOHLGEMUTH CHANDLER JETER BARNETT & RAY, P.C., Tulsa, Oklahoma, for Defendants/Appellants

P. THOMAS THORNBRUGH, VICE-CHIEF JUDGE:

¶1 Defendants/Appellants, Louis Talarico, III (Talarico), and LCT Capital, LLC (LCT)(collectively, Defendants or Talarico Defendants), appeal from the trial court's order denying their motion to dismiss the petition of Plaintiff/Appellee H. Michael Krimbill (Krimbill), pursuant to the Oklahoma Citizens Participation Act, 12 O.S. Supp. 2014 §§ 1430 through 1440 (OCPA or the Act). For the reasons discussed below, we affirm.

BACKGROUND

¶2 The parties are involved in protracted litigation in the state of Delaware, where LCT has filed claims of breach of contract, unjust enrichment, and fraudulent misrepresentation against Oklahoma-based, publicly traded NGL Energy Partners, LP, and its general partner, NGL Energy Holdings, LLC (collectively, NGL), resulting from a transaction known as the "TransMontaigne acquisition." In October 2015, Talarico sent the following email to James Kneale, the head of NGL's audit committee:

From: Lou Talarico
Sent: Thursday, October 8, 2015 1:51 PM
To: jimckneale@gmail.com
Subject: NGL Litigation
Attachments: Amended Complaint (as filed, 9-29-15).pdf

Jim,

I am contacting you regarding a complaint that LCT Capital has filed against NGL Energy Holdings and NGL Energy Partners regarding fees due in connection with the TransMontaigne transaction. An amendment to the original complaint was filed on September 29 and is attached for your review. Given the materiality of the claim as well as the nature of the events detailed in the complaint, I thought it important that the audit committee and board of directors be aware of the complaint.

We believe the misrepresentations made to LCT Capital, as detailed in the Complaint, are illustrative of broader, more systemic issues at the company under Mike's leadership -- issues that have affected the accuracy of NGL's public filings and Mike's public statements about the business.

We are available to discuss the complaint or other issues with you and the audit committee or the board at your convenience.

Regards,
Lou Talarico
LCT Capital, LLC

¶3 On October 16, 2015, Krimbill filed a petition in Tulsa County District Court alleging the email had libeled him personally. On October 30, 2015, Defendants moved to dismiss Krimbill's petition with prejudice, pursuant to, inter alia, the OCPA. On February 26, 2016, the district court denied this motion. Defendants now appeal.

STANDARD OF REVIEW

¶4 There is no established appellate standard of review in this case.[1] It is clear that the OCPA provides a new summary process/dismissal procedure in certain cases, however, and that, traditionally, Oklahoma appellate courts have reviewed decisions pursuant to such procedures by a de novo standard. The OCPA also requires dismissal if a plaintiff fails to show a prima facie case, and is hence similar to a motion for directed verdict. Directed verdict challenges also are reviewed de novo. Finally, Texas, which has an almost identical act, has adopted a de novo standard of review.[2] Hence, we find a de novo standard indicated by existing precedent and persuasive authority, and we adopt that standard here.

ANALYSIS

¶5 Oklahoma's Act, which became effective in 2014,[3] mirrors that of the Texas Citizens' Participation Act (TCPA or Texas Act), enacted in 2011 under the title, "Actions Involving the Exercise of Certain Constitutional Rights," Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001 through 27.011. The Texas Act has been the subject of numerous decisions by the Texas courts,[4] which we may look to as persuasive authority in resolving this matter. See, e.g., In re Fletcher's Estate, 1957 OK 7, ¶ 25, 308 P.2d 304 (general rule, with some exceptions, is that a statute adopted by Oklahoma from another state which at the time of adoption has been construed by the highest court of the first state, is presumed adopted as so construed; however, if decisions by the highest court of the other state occurred after adoption of the statute in Oklahoma, such decisions are persuasive only).

I. "ANTI-SLAPP" ACTS

¶6 The legislature enacted the OCPA "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of [persons] to file meritorious lawsuits for demonstrable injury." 12 O.S. Supp. 2014 § 1430.

A. The Purpose of "Anti-SLAPP" Acts

¶7 The legislation is an example of "anti-SLAPP" (Strategic Lawsuit Against Public Participation) legislation, the purpose of which is to curb "lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." Cal. Civ. Proc. Code § 425.16(a). Anti-SLAPP legislation appears to be the result of an increasing tendency by parties with substantial resources to file meritless lawsuits against legitimate critics, with the intent to silence those critics by burdening them with the time, stress, and cost of a legal action. To carry out this purpose, anti-SLAPP acts typically provide an accelerated dismissal procedure, available immediately after a suit is filed in order to weed out meritless suits early in the litigation process.

¶8 Anti-SLAPP acts may be generally characterized as "narrow" or "broad." See Shannon Hartzler, Protecting Informed Public Participation: Anti-SLAPP Law and the Media Defendant, 41 Val. U.L. Rev. 1235, 1236 (2007). A narrow act protects only certain speech made in limited circumstances, often when the speech is discussing a political or municipal issue.[5] The acts of Texas, Oklahoma and California are, by comparison, "broad" acts, directed at protecting a wide spectrum of First Amendment speech, with limited exceptions.[6]

B. The OCPA Procedure

¶9 In an OCPA proceeding, the initial burden is on the defendant seeking dismissal to show that the plaintiff's claim "is based on, relates to, or is in response to the [defendant's] exercise of the right of free speech, the right to petition, or the right of association." 12 O.S. Supp. 2014 § 1434(B). The burden then shifts to the plaintiff to show "by clear and specific evidence a prima facie case for each essential element of the claim in question." Id., § 1434(C). If § 1434(C) is satisfied, the burden shifts back to the defendant to show "by a preponderance of the evidence" a defense to the plaintiff's claims. Id., § 1434(D). If the plaintiff's prima facie case fails, or the defendant shows a defense by a preponderance of the evidence, the suit is dismissed.

¶10 The three basic issues thus presented by the text of the Act, and by this appeal, are (1) whether the defendant has shown the plaintiff's action is based on, relates to, or is in response to the defendant's exercise of rights protected by the Act; (2) whether the plaintiff has demonstrated a prima facie case; and (3) if so, whether the defendant shown a "valid defense by a preponderance of the evidence."

II. INTERPRETING THE OCPA

¶11 Interpreting the OCPA requires balancing the unusual judgment/dismissal provisions of § 1434 against two other OCPA provisions, §§ 1430 and 1440. The tension between these sections is immediately evident.

¶12 Section 1434(C) appears to introduce a new evidentiary standard of "clear and specific evidence" that has no prior history in Oklahoma. Section 1434(D) appears to allow a court to dismiss a case with prejudice based on the judge's weighing of the evidence on the merits of the case. Read in isolation, § 1434 appears to provide for a summary form of bench trial on the merits before a defendant has answered.

¶13 However, OCPA § 1440 provides that the Act "shall not abrogate or lessen any other defense, remedy, immunity or privilege available under other constitutional, statutory, case or common law or rule provisions," and § 1430 states the legislative purpose of the OCPA is to weed out meritless suits while protecting "the rights of a person to file meritorious lawsuits for demonstrable injury." Tension between the § 1434 procedure and the Act's statements of legislative intent is inescapable, and requires the resolution of several issues in a manner giving effect to legislative intent before we can analyze the facts in this case. The first such issue is the requirement that a plaintiff establish "a prima facie case for each essential element of the claim in question" by "clear and specific evidence."

III. THE "PRIMA FACIE CASE" AND 
"CLEAR AND SPECIFIC EVIDENCE"

¶14 Once a defendant has shown that the Act applies, the burden shifts to the plaintiff to show "by clear and specific evidence" the requirements of § 1434(C). The Act does not define "clear and specific evidence," and that phrase has not previously appeared in published Oklahoma appellate case law.

A. Prima Facie Case Under the Act

¶15 Oklahoma jurisprudence does define prima facie case. See, e.g., Hill v. State, 1983 OK CR 161, ¶ 3, 672 P.2d 308, quoting Black's Law Dictionary, 4th Rev. Ed., 1968, and defining "prima facie case" as, "Such as will suffice until contradicted and overcome by other evidence. A case which has proceeded upon sufficient proof to that stage where it will support finding if evidence to contrary is disregarded." Because the Legislature would not have stated two contradictory standards in the same sentence, we presume that its definition of "clear and specific evidence" in § 1434(C) is in harmony with the established standard for prima facie case.

¶16 The Texas courts have recognized this issue, and reached the same conclusion regarding the TCPA. In In re Lipsky, 460 S.W.3d 579 (Tex. 2015), the Texas Supreme Court noted:

The statute . . . requires not only "clear and specific evidence" but also a "prima facie case." In contrast to "clear and specific evidence," a "prima facie case" has a traditional legal meaning. It refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted.

Id. at 590.

¶17 We find such reasoning consistent with Oklahoma law. We hold that, even though the Oklahoma Act initially demands more information about a plaintiff's underlying claim by requiring a showing of a prima facie case, "the Act does not impose an elevated evidentiary standard or categorically reject circumstantial evidence." Id. at 591.

B. What Evidence Should the Court Consider 
while Examining for a Prima Facie Case?

¶18 Defendants argue that, in determining whether a prima facie case has been shown, the court may not consider the pleadings. We disagree.

¶19 The OCPA is clear that a district court "shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." 12 O.S. Supp. 2014 § 1435. In contrast, the minimal requirements of notice pleading do not mandate that a petition state sufficient facts to establish a prima facie case, but only an allegation of general facts supporting the elements of a cause of action. Hence, a petition, if pled to the minimum standard of notice pleading, may not provide sufficient "clear and specific evidence" for purposes of the OCPA. Nevertheless, the Act clearly contemplates that the pleadings may be considered.[7]

IV. "VALID DEFENSES" SHOWN BY A 
"PREPONDERANCE OF THE EVIDENCE"

¶20 One of the most unique features of the Act is the structure of § 1434(D), which allows dismissal if "valid defenses" are shown by a "preponderance of the evidence" even if a prima face case has been established. This section appears to provide for a pre-answer bench trial on the merits. Such a procedure would be unprecedented in Oklahoma law.

¶21 The Legislature stated in § 1440 of the Act that it did not intend to "abrogate or lessen any other defense, remedy, immunity or privilege available under other constitutional, statutory, case or common law or rule provisions." Unless we interpret the Act as transforming any action at law that may be subject to the OCPA -- and there are likely many affected actions[8] -- into a case that would allow the trial judge to decide disputed questions of material fact in a dismissal procedure, § 1434(D) must be more narrowly construed. Accordingly, for the following reasons, we find that disputed questions of material fact cannot be resolved in an OCPA dismissal proceeding.

A. Violation of § 1440 of the Act

¶22 As noted above, OCPA § 1440 is clear that the Legislature intended any remedy afforded by the Act to be limited in its effect on other remedies and defenses. However, if read literally, § 1434(D) provides for a pre-answer bench trial on the merits of a claim by providing that a judge may dismiss an action if a movant establishes each element of a valid defense by a preponderance of the evidence.

¶23 The existence of a prima facie case inherently establishes the existence of disputed questions of fact, in that it shows "sufficient proof to that stage where it will support findings if evidence to contrary is disregarded." In all other actions where the burden of proof is by a preponderance of the evidence, once a plaintiff shows a prima facie case, summary judgment is available only on issues of law. If read literally, however, § 1434 would allow dismissal based on the trial court's view of the weight of the evidence. As such, the Act would make dismissal far easier to achieve than summary judgment for defendants who may be protected by the Act. Such a result is entirely incompatible with the clear directive of § 1440.

¶24 The Court in In re Lipsky noted that the Texas Act should "not impose a higher burden of proof than that required of the plaintiff at trial." 460 S.W.3d at 591. We find this principle sound, and adopt it here. Since disputes of fact on the required elements of a tort prevent summary judgment, those same disputed facts cannot warrant dismissal under the OCPA.

B. Right to Jury Trial

¶25 In addition to rejecting a literal interpretation of § 1434(D) that would allow a judge to decide disputed facts traditionally reserved for a jury, we note that a literal interpretation also implicates constitutional safeguards regarding the right to jury trial. Oklahoma law previously has allowed judges to act as triers of fact in equitable cases, but has reserved this function to the jury in cases at law unless a jury is waived. Read literally, § 1434(D) would require a judge to act as the finder of fact in some cases at law that are subject to jury trial. Such an interpretation would impact the right to jury trial for the benefit of certain types of defendants, which also violates the directive of § 1440.

C. "Special law" Pursuant to Oklahoma Constitution, art. 5, § 46

¶26 A literal interpretation of § 1434(D) also could render the OCPA a special law prohibited by the Oklahoma Constitution, art. 5, § 46. That provision states:

The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law . . . Regulating the practice or jurisdiction of, or changing the rules of evidence in judicial proceedings.

¶27 "The terms of art. 5, § 46 command that court procedure be symmetrical and apply equally across the board for an entire class of similarly situated persons or things." Zeier v. Zimmer, Inc., 2006 OK 98, ¶ 13, 152 P.3d 861. "In a special laws attack under art. 5, § 46, the only issue to be resolved is whether a statute upon a subject enumerated in the constitutional provision targets for different treatment less than an entire class of similarly situated persons or things." Id. "The test is whether the provision fits into the structured regime of established procedure as part of a symmetrical whole. If an enactment injects asymmetry, the § 46 interdiction of special law has been offended." Id.

¶28 An interpretation of § 1434(D) that essentially denies a jury trial to certain groups of plaintiffs, transforms some actions at law into equitable ones, and creates a special category of dismissal or summary judgment applicable only to certain defendants across a broad variety of tort cases runs afoul of Okla. Const. art. 5, § 46. The reach of the OCPA is not likely confined simply to libel plaintiffs, but could reach into any tort involving speech. The number of different legal actions that might be "based on, relate[d] to or [] in response to a party's exercise of the right of free speech, right to petition or right of association," appears to be substantial.[9]

¶29 "By mandating uniformity of procedure, the terms of art. 5, § 46 command that all citizens of the state shall have equal access to legal institutions for application of the general ordinary forensic process." Zeier at ¶ 18. If the OCPA's evidentiary requirements herald a more stringent test for a special class of claims than generally applied to demurrers to the evidence and motions for directed verdict or summary judgment, and thus changes the fact-finder for an apparently arbitrary group of plaintiffs, the law also may run afoul of art. 5, § 46.[10]

D. The Right to File a Meritorious Lawsuit for Demonstrable Injury

¶30 We finally note the OCPA's clearly stated legislative purpose is to weed out meritless suits while protecting "the rights of a person to file meritorious lawsuits for demonstrable injury." 12 O.S. Supp. 2014 § 1430. The concept that a suit must be meritless to be dismissed is reinforced by the Act's "sanctions for deterrence" provision, § 1438, which allows "[s]anctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in the [OCPA]."

¶31 Oklahoma jurisprudence previously has not countenanced sanctions for acts that are neither frivolous nor without reasonable basis. If genuine questions of material fact or law exist as to the right of recovery, and it is necessary to weigh the evidence in order to decide the case on the merits, it appears highly improbable that the case was meritless from the outset. A cognizable legal theory and a disagreement of material fact, supported by evidence on both sides, pursuant to the common law standard presupposes that the suit is not meritless, and that it should not be subjected to immediate summary dismissal or a sanction. The OCPA specifically prohibits the abrogation of these common law principles.

¶32 If more than one interpretation is possible, this Court will not interpret an act of the Legislature so as to render it unconstitutional. In combination with the directives of §§ 1430, 1440, and 1438, we are called upon to interpret § 1434(D) to fit the broader scheme and purpose of the Act of providing for the early dismissal of meritless or frivolous suits, and to avoid constitutional infirmity. Adhering to our constitutional mandate, we therefore hold that disputed questions of fact cannot be resolved in an OCPA dismissal proceeding. If a plaintiff has established a prima face case in the second-stage inquiry, the court may only properly consider defenses that turn solely on a question of law. It may not weigh and decide truly disputed questions of fact as "defenses" in this third stage.

¶33 Having established these basic principles, we turn now to the facts of the case at hand.[11]

V. THE INITIAL BURDEN TO SHOW THE ACT APPLIES

¶34 Defendants were initially required to show that Krimbill's libel suit relates to Defendants engaging in activity protected by the OCPA, i.e., the exercise of the right of free speech; the right to petition; or the right of association. The Legislature has defined these protected activities in 12 O.S. Supp. 2014 § 1431 as follows:

2. "Exercise of the right of association" means a communication between individuals who join together to collectively express, promote, pursue or defend common interests;

3. "Exercise of the right of free speech" means a communication made in connection with a matter of public concern;

4. "Exercise of the right to petition" means any of the following: . . .[12]

¶35 Subsection 1431(7), in turn, defines a "matter of public concern" as meaning an issue related to:

a. health or safety,
b. environmental, economic or community well-being,
c. the government,
d. a public official or public figure, or
e. a good, product or service in the marketplace;

¶36 The district court found that Defendants' speech was "a communication made in connection with a matter of public concern regarding a good, product or service in the marketplace," pursuant to §§ 1431(3) and 1431(7), and that the communication was covered by the Act. However, speech involving "goods, product or services in the marketplace" may also be exempt from the Act under § 1439(2), concerning "commercial speech." Because this case arose from a commercial dispute, we examine this exemption.

A. The "Commercial Speech" Exemption

¶37 If speech is made in connection with a matter of public concern regarding a good, product or service in the marketplace, as found by the trial court here, the speech must cross a second threshold before the Act applies. Pursuant to § 1439(2), the OCPA shall not apply to:

 

2. A legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct the action is based upon arises out of the sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction in which the intended audience is an actual or potential buyer or customer[.]

 

¶38 Oklahoma has not attempted to reconcile the covered speech noted by § 1431(7), i.e., "speech on a matter of public concern related to a good, product or service in the marketplace," with the speech exempted by § 1439(2). The two clauses raise substantial questions, including such issues as the difference between speech "related to a good, product or service" and speech that "arises out of the sale or lease of goods [or] services"; and the difference between speech aimed at "an actual or potential buyer or customer" rather than "the public." Texas cases examining the exemption have developed certain rules related to it.

1. Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd., 
416 S.W.3d 71 (Tex. App. 2013)

¶39 In Newspaper Holdings, an assisted-living hotel and its owner sued a newspaper and its source, alleging that the paper had published defamatory statements about the hotel. The court stated that in determining whether a speech falls under the commercial speech exemption to the TCPA, courts should examine whether the following circumstances exist:

(1) the cause of action is against a person primarily engaged in the business of selling or leasing goods or services;

(2) the cause of action arises from a statement or conduct by that person consisting of representations of fact about that person's or a business competitor's business operations, goods, or services;

(3) the statement or conduct was made either for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services or in the course of delivering the person's goods or services; and

(4) the intended audience for the statement or conduct [is an actual or potential buyer or customer].

Id. at 88 (quoting and following Simpson Strong--Tie Co., Inc. v. Gore, 230 P.3d 1117 (Cal.2010)).

¶40 The Court in Newspaper Holdings decided that "although it was undisputed that the Newspaper was in the business of reporting community events, the Hotel's complained-of statements do not arise out of the lease or sale of the goods or services that NHI sells--newspapers." Essentially, the Court held the newspaper could invoke the Texas Act because the newspaper was not in the same business as the hotel, the newspaper's articles concerned whether the hotel met public licensing requirements and standards, and the intended audience was the public generally rather than the hotel's existing or potential customers. See id. at 81.

2. Backes v. Misko, 486 S.W.3d 7 (Tex. App. 2015), and 
Whisenhunt v. Lippincott, 474 S.W.3d 30 (Tex. App. 2015)

¶41 Backes and Whisenhunt expanded on the meaning of the Newspaper Holdings' element that "the statement or conduct was made either for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services or in the course of delivering the person's goods or services." Backes and Whisenhunt clarified that, for the commercial speech exemption to apply, a statement regarding "securing sales in the person's goods" required that the statement must be made for the purpose of "securing sales in the goods or services of the person making the statement." Backes at 21 and Whisenhunt at 42 (emphasis added).

3. Epperson v. Mueller, 01-15-00231-CV, 2016 WL 4253978 
(Tex. App. 2016)

¶42 Most recently, in Epperson v. Mueller, memorabilia dealers Epperson and Mueller sued one another for defamation. Epperson moved to dismiss Mueller's counterclaim pursuant to the TCPA.[13] The trial court cited the test used in Newspaper Holdings but reached the conclusion that the commercial speech exemption applied, holding that Epperson and Mueller were in the same business (memorabilia), and that Epperson's intended audience was comprised of the parties' actual or potential customers rather than the general public. Hence, the Court held Epperson's statements were not protected by the Texas Act. Id. at *12. The Court emphasized that Epperson and Mueller were in the same business and that Epperson's statements were not merely criticisms of Mueller but also were intended to promote Epperson's own goods/services over Mueller's. Id. at *11.

B. Interpreting the "Commercial Speech" Exemption

¶43 For the TCPA "commercial speech" exemption to apply, the Texas cases discussed above appear to require that (1) the parties are involved in the same general area of business; and (2) the statements forming the basis of the suit were made at least partially for the purpose of promoting sales of the goods or services of the person making the statement. If both of these requirements are met, the Courts held the TCPA does not apply and cannot be interposed as a defense.

¶44 In the case at hand, the speech at issue appears to be "on the border" of these principles, and may be "commercial speech" exempt from the Act. However, based on the limited evidence adduced in the trial court, it would be speculative at best for this Court to determine that Defendants and Krimbill are involved in the same business, or that Defendants made the statements at issue to promote their business aims. We therefore do not base our decision on an interpretation of the OCPA's "commercial speech" exemption, but instead presume that Defendants met their initial burden and that the Act applies in this case.

VI. THE PRIMA FACIE CASE AND AFFIRMATIVE DEFENSES 

¶45 The Act's requirement that a plaintiff show a prima facie case to avoid dismissal raises a further question concerning the line of demarcation between the "elements" necessary to a prima facie case and the "defenses" to a libel claim. This question has received little attention by the courts because its significance was limited. Since early statehood, Oklahoma has statutorily defined "libel" as follows:

Libel is a false or malicious unprivileged publication by writing, printing, picture, or effigy or other fixed representation to the eye, which exposes any person to public hatred, contempt, ridicule or obloquy, or which tends to deprive him of public confidence, or to injure him in his occupation, or any malicious publication as aforesaid, designed to blacken or vilify the memory of one who is dead, and tending to scandalize his surviving relatives or friends.

12 O.S.2011 § 1441.

¶46 Section 1441 can be interpreted as stating that it is the duty of a plaintiff to show unprivileged publication as part of a prima facie case. In 1981, however, the legislature enacted § 1444.1 (Pleading - Proof -- Defenses), which states:

In all civil actions to recover damages for libel or slander, it shall be sufficient to state generally what the defamatory matter was, and that it was published or spoken of the plaintiff, and to allege any general or special damage caused thereby. As a defense thereto the defendant may deny and offer evidence to disprove the charges made, or he may prove that the matter charged as defamatory was true and, in addition thereto, that it was published or spoken under such circumstances as to render it a privileged communication. (Emphasis added).

¶47 Section 1444.1 makes two statements regarding defenses: first, the "defendant may deny and offer evidence to disprove the charges made" -- i.e., present ordinary defenses -- "or" the defendant may prove truth and privilege as defenses. This separation together with the use of the word "prove" makes clear that, at least since 1981, "truth" and "privilege" are affirmative defenses to a libel or slander claim, rather than the opposites of those defenses being elements that must be shown by a plaintiff.[14] Inasmuch as the OCPA states that it does not abrogate prior statutes, common law, or rules, we hold that while § 1441 defines libel, § 1444.1 defines truth and privilege as affirmative defenses. Hence, the burden to show these defenses lies with the defendant in an OCPA proceeding, just as it would in any other proceeding.

A. The Affidavit

¶48 Krimbill presented the pleadings and his own affidavit to show a prima face case. Defendants argue, however, that Krimbill presented no evidence whatsoever. They contend the pleadings cannot be considered, and that this Court should disregard the affidavit because "the [trial] court did not rely on it," and also because it was inadmissible. If neither the pleadings nor a personal affidavit may be used, then showing a prima facie case under the Act presents a substantial burden for a plaintiff.

¶49 As discussed in Part IIIA above, the pleadings may be considered. We therefore reject Defendants' contention otherwise.

¶50 Defendants' first argument concerning the affidavit is based on their observation that the district court did not refer to the affidavit in its decision. While it is true that the court did not specifically identify the evidence it considered, there is no requirement in the Act that it do so. Legal error may not be presumed from a silent record; it must be affirmatively demonstrated. Hamid v. Sew Original, 1982 OK 46, ¶ 7, 645 P.2d 496. We find no merit in the argument that we should not consider the affidavit because the district court "did not rely on it." Such a restriction is not consistent with the de novo standard of review. Furthermore, "[this] Court is not bound by the trial court's reasoning and may affirm the judgment below on a different legal rationale." Hall v. GEO Grp., Inc., 2014 OK 22, ¶ 17, 324 P.3d 399.

B. The Admissibility of the Affidavit

¶51 Defendants next argue that Krimbill's affidavit must be disregarded because it is conclusory, citing as authority the cases of In re Lipsky, 460 S.W.3d 579 (Tex. 2015), and Concorde Res. Corp. v. Kepco Energy, Inc., 2011 OK CIV APP 39, ¶ 29, 254 P.3d 734. The Court in Concorde noted, "The party responding to a motion for summary judgment has an obligation to present something which shows that, when the date of trial arrives, he will have some proof to support his allegations. . . . A general statement in a summary judgment affidavit opining liability, without providing any information and without offering any reason for the conclusions, [is] not sufficient." Id. (emphasis added; citations omitted).

¶52 The Texas Court in Lipsky addressed the sufficiency of an affidavit stating that a libel plaintiff had "suffered direct economic losses and lost profits" without elaborating on the cause of that harm. Lipsky at 592-93. The opinion did not dispute that the affidavit served as evidence of alleged losses, but found that it did not connect the losses to the plaintiff's activities. The affidavit was thereby found to be insufficient as evidence of the element the defendants sought to prove, which was that the plaintiff's activities had caused defendants losses rather than simply that the defendants had suffered losses.

¶53 Concorde and Lipsky are both distinguishable from the present case. The affidavit in Concorde opined conclusively as to the ultimate legal issue of liability without supplying any facts to support that conclusion. If Krimbill's affidavit had simply stated, "I have been libeled," without further elaboration, the result here would be the same as in Concorde. That situation is not present here, however. The holding in Lipsky is even more distinguishable, because the Court did not reject the affidavit for being conclusory, but for being so insufficient that, even if true, it failed to show a required element.

¶54 As noted above, OCPA § 1440 is clear that the Act "shall not abrogate or lessen any other defense, remedy, immunity or privilege available under other constitutional, statutory, case or common law or rule provisions." Thus, the proper question is whether Krimbill's testimony normally would be admissible at trial or in a summary judgment proceeding. If so, it is admissible for purposes of the Act.

¶55 Oklahoma law also is clear that a witness may testify about any matter of which the witness has personal knowledge, and that "[e]vidence to prove personal knowledge may consist of the witness's own testimony." 12 O.S.2011 § 2602. "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. 12 O.S.2011 § 2401. Unless it is clear that Krimbill has no personal knowledge of whether NGL has made inaccurate public filings and public statements, his denial is admissible. The fact that the denial is self-interested goes to its weight at trial, not to its admissibility for dismissal purposes. We find that Krimbill's affidavit was generally admissible to the same extent Krimbill's same testimony would be admissible at trial. The district court did not err to the extent it considered it.

C. "Malice"

¶56 Defendants argue that Krimbill is a "public figure," and as such, he must show a prima facie case for the additional element of malice. Assuming without deciding that the "public figure" status applies here, the actual malice standard requires proof that a defendant acted with knowledge that a publication was false "or with reckless disregard of whether it was false or not." Martin v. Griffin Television, Inc., 1976 OK 13, ¶ 28, 549 P.2d 85 (quoting New York Times Co. v. Sullivan, 376 U.S. 254, 279-80, 84 S. Ct. 710, 726 (1964)); see also Huckabee v. Time Warner Entm't Co., 19 S.W.3d 413, 420 (Tex. 2000).

¶57 Reckless disregard is a subjective standard, focusing on a defendant's state of mind. Bentley v. Bunton, 94 S.W.3d 561, 591 (Tex. 2002). Mere negligence is not enough. Id. Rather, the plaintiff must establish "'that the defendant in fact entertained serious doubts as to the truth of his publication,'" or had a "'high degree of awareness of . . . [the] probable falsity'" of the published information. Id. (quoting Harte--Hanks Commc'ns, Inc. v. Connaughton, 491 U.S. 657, 688, 109 S. Ct. 2678 (1989)). Actual malice generally consists of "'[c]alculated falsehood.'" Bunton at 591 (quoting Garrison v. Louisiana, 379 U.S. 64, 75, 85 S. Ct. 209 (1964)). When a defendant's words are reasonably subject to more than one interpretation, the plaintiff must establish either that the defendant knew the words would convey a defamatory message or had reckless disregard for their effect. See Bunton at 603.

¶58 The "actual malice" element presents an especially difficult problem when it becomes part of the procedure mandated by the Act, inasmuch as malice is decided by a subjective standard, focusing on the defendant's state of mind, knowledge, and intent. The difficulty to a plaintiff of showing a prima facie case for a subjective belief or knowledge by the defendant in a "trial" held before discovery cannot be overestimated. "The question whether the evidence in the record in a defamation case is sufficient to support a finding of actual malice is a question of law." See Grogan v. KOKH, LLC, 2011 OK CIV APP 34, ¶ 15, 256 P.3d 1021, (citing Harte--Hanks Commc'ns). Unless a defendant includes his/her mental processes and subjective understanding as part of a motion to dismiss, a plaintiff would appear to have little chance of adducing any direct proof whatsoever of this element beyond the plaintiff's own belief that the defendant acted with actual malice. Given the practical improbability of direct evidence, unless the Oklahoma Legislature's intention was to effectively abolish defamation actions by public figures, it appears that a prima facie case for this element may be shown by circumstantial evidence.

¶59 The Texas appellate courts appear to have adopted the latter approach in cases under the TCPA:

A defendant's state of mind "can--indeed, must usually--be proved by circumstantial evidence." Campbell, 471 S.W.3d at 629; see also Lipsky, 460 S.W.3d at 584 (concluding "clear and specific evidence under the" TCPA "includes relevant circumstantial evidence"). The evidence must be viewed in its entirety. Campbell, 471 S.W.3d at 629. "In addition, the supreme court has stressed that proof of actual malice is not defeated by a defendant's self-serving protestation of sincerity." Id.

MacFarland v. Le-Vel Brands LLC, 05-16-00672-CV, 2017 WL 1089684, at *12 (Tex. App. Mar. 23, 2017).

¶60 In the case at hand, the trial court found that the limited circumstantial evidence indicated the possibility of actual malice. We find no error in this holding. We find that Krimbill presented a prima facie case of libel, and that the burden therefore shifted to Defendants to show an absolute defense to that prima facie case, as allowed by the Act.

D. The "Privilege" Question

¶61 Defendants argue that Krimbill was required to provide evidence that Defendants' statements were "not privileged" as part of establishing a prima facie case. As discussed above, however, privilege is an affirmative defense pursuant to 12 O.S. 2011§ 1444.1. Thus, Defendants bear the burden of showing privilege as a matter of law in order to obtain summary dismissal of Krimbill's suit.

¶62 Defendants also argue that their statements were in fact privileged, and that they therefore have a valid defense pursuant to the OCPA. Whether a communication is privileged is initially a question of law to be determined by the court. Samson Inv. Co. v. Chevaillier, 1999 OK 19, 988 P.2d 327. As set forth in 12 O.S.2011 § 1443.1, on which Defendants rely:

A. A privileged publication or communication is one made:

First. In any legislative or judicial proceeding or any other proceeding authorized by law;

Second. In the proper discharge of an official duty;

Third. By a fair and true report of any legislative or judicial or other proceeding authorized by law, or anything said in the course thereof, and any and all expressions of opinion in regard thereto, and criticisms thereon, and any and all criticisms upon the official acts of any and all public officers, except where the matter stated of and concerning the official act done, or of the officer, falsely imputes crime to the officer so criticized.

¶63 Defendants first contend that their statement was privileged because it was made "in the course of . . . a legislative or judicial or other proceeding authorized by law."

¶64 The courts have generally restricted the reach of § 1443.1 to reports of things actually stated or discussed in court proceedings or records, or during other official proceedings. See Grogan at ¶ 38, (statement implying that teacher has acted as a terrorist is not privileged by § 1443.1 because there was no evidentiary material in this record showing that terrorism was discussed in any official proceeding). In Kirschstein v. Haynes, 1990 OK 8, ¶ 2, 788 P.2d 941 (superseded by rule on other grounds, as stated in Dani v. Miller, 2016 OK 35, n.1, 374 P.3d 779), however, the Court extended the law beyond the strict wording of the text of § 1443.1, stating:

We have determined we will recognize an absolute privilege for communications made preliminary to proposed judicial or quasi-judicial proceedings in favor of attorneys, parties and witnesses generally under the standards set forth at the Restatement (Second) of Torts §§ 586, 587 and 588 and the comments thereto. (Emphasis added).

¶65 The main focus of Kirschstein was placing reports, documents or other statements made in anticipation of, or in preparation for, litigation inside the privilege granted by § 1443.1. By stating that the privilege operated pursuant to "the standards set forth at the Restatement (Second) of Torts §§ 586, 587 and 588 and the comments thereto," Kirschstein expanded the standards set by § 1443.1 to include the common law "as embodied in the Restatement," rather than simply placing certain statements made before suit was filed under the protection of
§ 1443.1. See Kirschstein at ¶ 13.

¶66 Restatement § 587 states:

A party to a private litigation . . . is absolutely privileged to publish defamatory matter concerning another . . . during the course and as a part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding.

Comment 'c' further notes that:

c. Relation of statement to proceedings. It is not necessary that the defamatory matter be relevant or material to any issue before the court. It is enough that it have some reference to the subject of the inquiry. Thus, while a party may not introduce into his pleadings defamatory matter that is entirely disconnected with the litigation, he is not answerable for defamatory matter volunteered or included by way of surplusage in his pleadings if it has any bearing upon the subject matter of the litigation. The fact that the defamatory publication is an unwarranted inference from the alleged or existing facts is not enough to deprive the party of his privilege, if the inference itself has some bearing upon the litigation. (Emphasis added.)

¶67 This standard suggests that material otherwise irrelevant to the subject matter of litigation may still be a legitimate part of the pleadings or proceedings, and therefore privileged, if it has "any bearing upon the subject matter of the litigation." Precisely how a court should determine whether material with no relevance to the question under litigation still has a "bearing upon the subject matter of the litigation" is not explained, and we find only three reported cases addressing the issue covered by "Comment c."[15] Clearly, however, the inquiry is highly fact-based, and extremely difficult to perform accurately in a summary dismissal procedure held before a defendant has even filed an answer.

¶68 The factual questions presented in the case at hand include whether the allegations of false public statements and inaccurate filings contained in Talarico's email are in fact a part of the pleadings or proceedings in the underlying Delaware case, and whether such statements had some bearing on the subject of the case. If so, the email may qualify as a "fair and true report of a judicial proceeding." Defendants argue that paragraphs 75, 87-91, 94, 99, 102, 104 and 119-20 of the amended petition cover the same allegations made in the email, and that the comments in the email therefore are privileged as a report of a pleading.

¶69 Although two of the cited paragraphs do allege some form of inaccurate public filing, we agree with the trial court that, absent a much more extensive overview of the Delaware litigation, some of the email appears to have no bearing upon the subject matter of the Delaware litigation. We therefore find that pursuant to the limited record before us, we cannot determine if the statement central to this case was covered by a litigation privilege.

E. Opinion

¶70 Defendants next contend that the statements in question were opinions rather than statements of fact. The First Amendment provides protection for statements that cannot "'reasonably be interpreted as stating actual facts'" about an individual. Milkovich v. Lorain Journal Co., 497 U.S. 1, 17, 110 S. Ct. 2695 (1990), (quoting Hustler Magazine, Inc. v. Falwell, 485 U.S. 46, 50, 108 S. Ct. 876 (1988)). As a general rule, statements which are opinionative and not factual in nature, and which cannot be verified as true or false, are not actionable as slander or libel under Oklahoma law. See, e.g., Miskovsky v. Oklahoma Pub. Co., 1982 OK 8, ¶ 32, 654 P.2d 587. However, if the defendant expresses a derogatory opinion without disclosing the facts on which it is based, there may be liability "if the comment creates the reasonable inference that the opinion is justified by the existence of unexpressed defamatory facts." McCullough v. Cities Serv. Co., 1984 OK 1, 676 P.2d 833, citing Restatement (Second) of Torts § 566 (1977); see also Metcalf v. KFOR-TV, Inc., 828 F. Supp. 1515, 1529 (W.D. Okla. 1992)(fact that a statement claims to be an opinion is not conclusive of whether the statement is actionable; if the statement implies the existence of a fact susceptible of being proved true or false, it may be actionable). Whether a statement is one of fact or opinion, for purposes of determining defamation liability, is a question of law. Metcalf, id.

¶71 The statements in this case alleging inaccurate public filings appear to be inherently factual and capable of verification. Defendants argue that, even if the allegation of inaccurate filings is not opinion, its statement that, "We believe the misrepresentations made to LCT Capital, as detailed in the Complaint, are illustrative of broader, more systemic issues at the company under Mike's leadership" is a statement of opinion. Even if this is so, however, we find no provision in the Act for some form of "partial dismissal" at a pre-answer stage.

F. The "Falsehood" Element

¶72 Talarico stated in the email that Krimbill's behavior had "affected the accuracy of NGL's public filings and [Krimbill's] public statements about the business." Defendants argue that it is Krimbill's burden under the OCPA to produce evidence that the implication of inaccurate public filings and statements is false in order to demonstrate a prima facie case for libel. We disagree pursuant to our analysis of 12 O.S.2011 §1444.1 above. As noted there, truth appears to be an affirmative defense. Further, Krimbill stated by affidavit that it was his responsibility to ensure that NGL's public filings were accurate, that any filings he had certified in his position at NGL were accurate, and that Talarico's implication that NGL's public filings or statements were inaccurate was false. We find a disputed question of fact as to the "truth" of this statement, and pursuant to our interpretation of §1434(D), this question cannot be resolved in a summary proceeding.

G. Common Law Fair Comment

¶73 Defendants argue that the statements in question were also covered by the "common law fair comment" privilege.

The common law fair comment privilege extends to fair expressions on matters of public interest. It differs from both: (1) the common law fair report privilege--which affords a qualified or conditional privilege to the media when they republish defamatory material in an account of a public or official proceeding, i.e., judicial proceedings, legislative sessions, judicial hearings, or official news conferences; and 2) its statutory counterpart, 12 O.S.2001 § 1443.1--which embodies a similar statutory privilege as a complete defense to libel. Although all three concepts overlap, the scope of the common law fair comment privilege, encompassing expressions of opinion on all matters of public opinion, is broader than either the common law fair report doctrine or the terms of the statute--both of which have their roots in political speech concepts and encompass public interest reports of official actions or proceedings.

Grogan, 2011 OK CIV APP 34at ¶ 39 (quoting Magnusson v. New York Times Co. d/b/a KFOR, 2004 OK 53, ¶ 10, 98 P.3d 1070, for the principle that the common law fair comment privilege developed as a defense to actions for defamation, invasion of privacy and intentional infliction of emotional distress). Grogan further notes that the fair comment defense "protects statements that (1) involve matters of public concern, (2) are based on true or privileged facts, (3) represent the opinion of the speaker, and (4) are not made for the sole purpose of causing harm." Grogan at ¶ 39, citing Magnusson (emphasis added).

¶74 As we have already found, the record here reveals questions of fact as to the truth of Talarico's statements, and because, on the limited record before us, we cannot determine whether the email statements are privileged as a matter of law, we cannot determine if the "fair comment" privilege currently applies in this case.

CONCLUSION

¶75 The OCPA as written has certain inherent contradictions. It may be interpreted as radically changing the mode of procedure in many cases, and establishing an unprecedented system of mandatory bench trials on the merits before an answer is even filed. However, the Act also contains clear legislative statements that it "shall not abrogate or lessen any other defense, remedy, immunity or privilege" and that the purpose of the OCPA is to weed out meritless suits while protecting "the rights of a person to file meritorious lawsuits for demonstrable injury." We have interpreted the Act in a manner consistent with these principles while at the same time avoiding an interpretation that the Act is unconstitutional. We find that the district court did not err in denying the motion to dismiss pursuant to the OCPA in this case.

¶76 AFFIRMED.

WISEMAN, J., and RAPP, J. (sitting by designation), concur.

FOOTNOTES

[1] The Oklahoma Supreme Court cases to date that have addressed the current version of the Act, Anagnost v. Tomecek, 2017 OK 7, 390 P.3d 707, and Steidley v. Singer, 2017 OK 8, 389 P.3d 1117, did not establish a full standard of review because the sole issue in each of those cases concerned whether the Act applied retroactively.

[2] "We apply a de novo standard of review when deciding whether a non-movant has satisfied her burden under the Anti--SLAPP statute." Deaver v. Desai, 483 S.W.3d 668, 676 (Tex.Ct.App. 2015)(abrogated on other grounds in In re Lipsky, 460 S.W.3d 579 (Tex.2015)).

[3] "The [OCPA] was amended/re-written in 2014 to become effective on November 1, 2014." Anagnost, 2017 OK 7 at ¶ 8; see also, Laura Long, Slapping Around the First Amendment: An Analysis of Oklahoma's Anti-SLAPP Statute and Its Implication on the Right to Petition, 60 Okla. L.Rev. 419 (2007), for a discussion of the state's "anti-SLAPP" act as it existed at that time, at 12 O.S. § 1443.1.

[4] A cursory search of the Texas reporters reveals over one hundred appellate cases involving the Texas Act in the previous five years.

[5] See, e.g., Ariz. Rev. Stat. §§ 12-751 -- 12-752 (2006), protecting "[s]tatements that are . . . made as part of an initiative, referendum or recall effort, before or submitted to a government body, concerning an issue under review by that body, to influence government action or result are protected." The article cited above describes Oklahoma's 2007 anti-SLAPP statute as narrowly drawn because it applied only to claims of libel. 41 Val.U.L.Rev. at 1249-1251.

[6] See 12 O.S. Supp. 2014, § 1432(A), stating that "[i]f a legal action is based on, relates to or is in response to a party's exercise of the right of free speech, right to petition or right of association, that party may file a motion to dismiss the legal action." See also Cal. Civ. Pro. Code § 425.16(b)(1), which provides:

A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

[7] Although this Court stated, in Anderson v. Wilken, 2016 OK CIV APP 35, ¶ 4, 377 P.3d 149, that a plaintiff may "not rely on the facts pled in an OCPA dismissal proceeding," this statement was made in the context of a discussion of the unique procedural difficulty posed by OCPA § 1437. Section 1437 requires that, if a district court fails to set a hearing on an OCPA motion within a specified time, the motion is deemed denied and the matter may be immediately appealed without hearing any evidence below. We noted the problem created by requiring an appellate court to review a decision before any evidence is taken in the district court, and that due process would likely require the appellate court to take evidence and conduct a de novo trial of the issues, a function that Oklahoma's appellate courts have not previously performed, and that is traditionally outside our jurisdiction. It was in this context that we stated this Court and the parties could not simply rely on the pleadings at the appellate level, because the parties may need to present other facts beyond those required by minimal notice pleading.

[8] In 2016 alone, Texas appellate courts considered TCPA claims involving intentional infliction of emotional distress (Ana Sophia SPENCER & William Alex Spencer, Appellant v. Jennifer Overpeck, Appellee, 04-16-00565-CV, 2017 WL 993093, at *3 (Tex. App. Mar. 15, 2017)); harassment by a homeowners' association (Long Canyon Phase II & III Homeowners Ass'n, Inc. v. Cashion, 03-15-00498-CV, 2017 WL 875314, at *1 (Tex. App. Mar. 3, 2017)); the disclosure of the identity of a person making a complaint (Int'l Ass'n of Drilling Contractors v. Orion Drilling Co., LLC, 01-16-00187-CV, 2016 WL 7104019, at *1 (Tex. App. Dec. 6, 2016)); rights under federal labor law arising out of demonstrations near stores (United Food & Commercial Workers Int'l Union v. Wal-Mart Stores, Inc., 02-15-00374-CV, 2016 WL 6277370 (Tex. App. Oct. 27, 2016)); a suit brought by the Unauthorized Practice of Law Committee for the Supreme Court of Texas (Booker v. Unauthorized Practice of Law Comm. for Supreme Court of Texas, 05-16-00039-CV, 2016 WL 5724898, at *1 (Tex. App. Oct. 3, 2016); tortious interference with contract (Deuell v. Texas Right to Life Comm., Inc., 508 S.W.3d 679 (Tex. App. 2016), reh'g overruled (Dec. 29, 2016)); violations of the Texas Uniform Trade Secrets Act (UTSA), business disparagement and invasion of privacy (Miller v. Talley Dunn Gallery, LLC, 05-15-00444-CV, 2016 WL 836775, at *2 (Tex. App. Mar. 3, 2016). It would be a mistake to consider the Act as applying only to classic libel suits.

[9] See footnote 8, supra.

[10] A further curious question arises if the Act requires a trial court to judge a defense on the merits pursuant to a preponderance standard before an answer has even been filed: what is the effect of a denial of such judgment? The court has considered the stated defenses on the merits, and found them inapplicable pursuant to a preponderance of the evidence. If the defendant raises no additional evidence or defenses, is it precluded from attempting to litigate these same defenses in a subsequent proceeding?

[11] We cannot help noting that this legislation intended to provide a rapid and simple procedure has generated an appeal raising at least 12 factual/legal questions of defamation law and has delayed proceedings for some 18 months, before the defendant has answered. It appears that many types of suits potentially covered by the Act will now make trips to the appellate courts before they are at issue in the district courts.

[12] The definition of "exercise of the right to petition" continues with numerous examples that we will not list because they are not implicated in our analysis.

[13] The irony of this situation is difficult to escape.

[14] "An affirmative defense is established when the publication is substantially true." Akins v. Altus Newspapers, Inc., 1977 OK 179, 609 P.2d 1263. The general rule is that the 'truth of the communication is a complete defense to a civil action for libel.'" Grogan v. KOKH, LLC, 2011 OK CIV APP 34, ¶ 11, 256 P.3d 1021, citing Oklahoma Publ'g Co. v. Kendall, 1923 OK 999, ¶ 35, 221 P. 762.

[15] See Milliner v. Enck, 709 A.2d 417 (Pa. Super. Ct. 1998); Green Acres Trust v. London, 688 P.2d 658 (Ariz. Ct. App. 1983); and Harman v. Belk, 600 S.E.2d 43 (N.C. Ct. App. 2004).






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 1983 OK CR 161, 672 P.2d 308, HILL v. STATE
Discussed
Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2011 OK CIV APP 34, 256 P.3d 1021, GROGAN v. KOKH, LLC
Discussed at Length
 2011 OK CIV APP 39, 254 P.3d 734, CONCORDE RESOURCES CORP. v. KEPCO ENERGY, INC.
Discussed
 2016 OK CIV APP 35, 377 P.3d 149, ANDERSON v. WILKEN
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1990 OK 8, 788 P.2d 941, 61 OBJ 241, Kirschstein v. Haynes
Discussed
 1957 OK 7, 308 P.2d 304, IN RE FLETCHER'S ESTATE
Discussed
 1923 OK 999, 221 P. 762, 96 Okla. 194, OKLAHOMA PUBL. CO. v. KENDALL
Discussed
 2004 OK 53, 98 P.3d 1070, MAGNUSSON v. NEW YORK TIMES CO. d/b/a KFOR
Discussed
 2006 OK 98, 152 P.3d 861, ZEIER v. ZIMMER, INC.
Discussed
 1976 OK 13, 549 P.2d 85, MARTIN v. GRIFFIN TELEVISION, INC.)
Discussed
 2014 OK 22, 324 P.3d 399, HALL v. THE GEO GROUP, INC
Discussed
 2016 OK 35, 374 P.3d 779, DANI v. MILLER
Discussed
 2017 OK 7, 390 P.3d 707, ANAGNOST v. TOMECEK
Discussed at Length
 2017 OK 8, 389 P.3d 1117, STEIDLEY v. SINGER
Discussed
 1977 OK 179, 609 P.2d 1263, AKINS v. ALTUS NEWSPAPERS, INC.
Discussed
 1982 OK 8, 654 P.2d 587, Miskovsky v. Oklahoma Pub. Co.
Discussed
 1982 OK 46, 645 P.2d 496, Hamid v. Sew Original
Discussed
 1999 OK 19, 988 P.2d 327, 70 OBJ 859, Samson Investment Co. v. Chevaillier
Discussed
 1984 OK 1, 676 P.2d 833, McCullough v. Cities Service Co.
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 1430, Title - Purpose
Discussed at Length
 12 O.S. 1431, Definitions
Cited
 12 O.S. 1432, Motion to Dismiss Legal Action Based on a Party's Exercise of Rights
Cited
 12 O.S. 1434, Ruling on a Motion to Dismiss - Standard of Proof
Cited
 12 O.S. 1435, Consideration of Pleadings and Affidavits - Specific and Limited Discovery
Cited
 12 O.S. 1441, Definition of Libel
Cited
 12 O.S. 1443.1, Privileged Communication Defined - Exemption from Libel
Discussed at Length
 12 O.S. 1444.1, Pleading - Proof - Defenses
Discussed
 12 O.S. 2401, Relevant Evidence Defined
Cited
 12 O.S. 2602, Lack of Personal Knowledge
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA